EXHIBIT A

Sean N. Egan (# 7191)
*seannegan@sneganlaw.com*
Parkside Tower – Suite 950
215 South State Street
Salt Lake City, Utah  84111-2374
Telephone:  (801) 363-5181
Facsimile:  (801) 363-5184
 *Attorney for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF UTAH

---

| | |
|---|---|
| GENA GOLDEN, an individual and SUSAN GOLDEN, an individual, | **AFFIDAVIT OF SEAN N. EGAN IN SUPPORT OF RULE 56(d) MOTION FOR CONTINUANCE OF SUMMARY JUDGMENT PROCEEDINGS** |
| Plaintiffs, | |
| vs. | |
| MENTOR CAPITAL, INC., a Delaware corporation, LABERTEW & ASSOCIATES, a Utah limited liability company, and Michael L. Labertew, an individual | Civil No. 2:15-CV-00176-TC |
| | Honorable Jill N. Parrish |
| Defendants. | Magistrate Judge Brooke C. Wells |
| | **(Jury Trial Demanded)** |

STATE OF UTAH          )
                                     : ss.
COUNTY OF SALT LAKE  )

SEAN N. EGAN, ESQ., being first duly sworn, deposes and states as follows:

1.      I am an attorney licensed to practice in the State of Utah and am a member in good

standing with the Utah State Bar.  I am counsel for plaintiffs Gena Golden and Susan Golden

("Golden").  I have personal knowledge of the facts set forth in this affidavit.

2.      On March 19, 2015, I filed a suit on behalf of Golden against defendants alleging

violations of various securities laws as well as common law claims.  I later filed an Amended

Complaint adding Michael L. Labertew, Esq. as a defendant individually.

3.      On May 18, 2015, Golden served her first set of written discovery on the Labertew

defendants.  This discovery was answered on June 18.

4.      On July 6, 2015, Golden served a subpoena for documents on Mentor Capital, Inc.

which produced responses on August 6.  At that same time, Mentor filed a Motion to Dismiss.

Included in this filing was a lengthy declaration from Mentor's CEO Chester Billingsley.  A copy

of this declaration is attached hereto as Exhibit 1.

5.      Two statements made by Billingsley in this declaration include the following:

> Yet, the blanket opinion letter was not made public in any way to Van
> Rixel, plaintiffs, Richard Golden, or anyone else until March 24[th],
> five days after Van Rixel had already sent his check to Mentor, and
> four days after the March 20[th] date on the two checks from the
> Goldens to Van Rixel.
>
> . . .
>
> Mentor has over 4,000 shareholders and hundreds, if not thousands,
> of these shareholders have successfully navigated purchasing stock
> from Mentor; opening a brokerage account willing to accept Mentor's
> stock; requesting, arranging, and obtaining their own individual
> opinion letters, if needed, to satisfy the transfer agent, brokerage, etc.
> of the proprietary [sic] of their purchase of stock; using the blanket
> opinion letter; arranging for the deposit of that stock into their
> brokerage account; and effecting the sale or holding of their Mentor
> stock as an investment.

See Billingsley Declaration No. 1 at ¶¶ 29 and 32.

SNE Afv'd.wpd

2

6.      On August 27, 2015, after reviewing the documents Mentor produced in response to Golden's subpoena as well as the assertions made in the Billingsley Declaration, Golden filed a Motion for Leave to File a Second Amended Complaint.  Defendants filed an Opposition which included a second declaration from Billingsley.

7.      On September 29, 2015, the Court granted Golden leave to file a Second Amended Complaint.

8.      On October, 2, 2015, Golden served its First Request for Production of Documents on Mentor.  These requests sought all information pertaining to what was posted on the Mentor website in February and March 2014.  The purpose of this request is to determine exactly when the Blanket Opinion Letter ("BOL") which was dated March 13, 2015 was posted for review by the public.  This was a direct response to Billingsley's statement in paragraph 29 of his August 6th Declaration that the BOL was not posted until March 24, 2014.

9.      Golden also sought all documents which supported the assertions in paragraph 32 of Billingsley's declaration regarding the experiences of other Mentor shareholders.  The purpose of this inquiry is to determine the ability of shareholders who purchased Mentor stock following Mentor's transition to a cannabis company to determine whether any other shareholders had similar problems depositing their shares and to challenge the validity of the assertions made by Billingsley in paragraph 32 of his August 6th Declaration.

10.     Mentor has not responded to this discovery.  Instead, it filed a Second Motion to Dismiss on October 13, 2015 and attached documents and declarations which are outside the Complaint.  Defendants also invoked 15 U.S.C. § 78u-4 as grounds for relief.  Subsection 3 of this statute provides that discovery is stayed while a motion to dismiss is pending.  Mentor has objected to Golden's discovery by relying on this provision.  Therefore, discovery is at a standstill.

11.     Although Michael Labertew and I had informal discussions about setting a deposition date for August 2015, I have not had the opportunity to take any deposition testimony from any defendant.  This is because I wanted to amend the Complaint and to obtain documents from Mentor.  Now I am defending defendants' Second Motion to Dismiss.

12.     Under the original scheduling order entered in this case, fact discovery is set to concluded February 29, 2016.

13.     Golden requires a continuance of summary judgment proceedings to pursue discovery it has already identified including document production by Mentor as well as a Rule 30(b)(6) deposition of Mentor and any other person who may have knowledge of the events at issue in this case.  In addition, Golden requires an opportunity to depose Labertew having received Mentor's full document production.

14.     This additional discovery will likely lead to evidence that will establish or confirm the following:

- That Mentor was actively involved in the sale of Mentor shares to Golden;

- That Mentor knew Golden was the actual purchaser of the shares at the time the purchase was made in March 2014;

- That Mentor posted the Blanket Opinion Letter on or about March 13, 2014, the day it was dated;

- That Mentor took a role in drafting the BOL with the Labertew defendants;

- That the BOL was materially false and misleading in a number of respects including that the SEC did not issue a "No Action" letter and that the shares Mentor was offering were not freely tradeable or exempt from registration;

- That the original Main Street Capital warrants were not redeemed or extended before the expiration of the extension period under the Main Street Capital Plan of Reorganization;

- That Mentor issued warrants to Golden after it issued shares in violation of the Main Street Capital bankruptcy plan of reorganization;

- That Mentor shareholders were not able to deposit their Mentor shares when Golden was attempting to do so because of doubts as to the validity of the shares themselves; and

- That Mentor shareholders who purchased after Mentor's transition to a cannabis company, if any, have had great difficulty depositing those shares.

SNE Afv'd.wpd

15.     This evidence will enable Golden to defeat defendants' summary judgment motion because it will establish that Golden had sufficient privity with Mentor to state a claim under Section 12 of the 1933 Act.

16.     This evidence will enable Golden to defeat defendants' summary judgment motion because it will establish that defendants made materially false and misleading statements of fact in the BOL and other communications Mentor knew were being shown to Richard Golden and others, that defendants made these statements with the intent to defraud or with conscious disregard that shareholders such as Golden would be misled by them, that Golden relied upon these misstatements and that Golden suffered losses as a result.  This evidence would therefore satisfy the elements of a Rule 10b-5 claim.

17.     This evidence would also satisfy the elements of Golden's common law claims for fraud and negligent misrepresentation including a loss of the amount paid to purchase the shares.

18.     Golden will be significantly prejudiced by a denial of more time to pursue discovery because defendants, and in particular Mentor, are the sole sources of the information relating to when the BOL was first published, and what the experiences of other Mentor shareholders has been in depositing shares.  In addition, deposition testimony from Labertew and Mentor will enable Golden

to challenge and verify the accuracy, or inaccuracy, of statements made by Billingsley in his declaration on a host of other topics as well including the representations made in the BOL.

SIGNED under the pains and penalties of perjury this 10th day of November, 2015

By _____
SEAN N. EGAN, ESQ.

STATE OF UTAH               )
                                          : ss.
COUNTY OF SALT LAKE  )

SUBSCRIBED AND SWORN to efore me this 10th day of November, 2015.



NOTARY PUBLIC

West Jordan

My Commission Expires:          Residing at:

9.12.2016

Notary Public
BIRGIT BOCK
Commission #658825
My Commission Expires
September 12, 2016
State of Utah

SNE Afv'd.wpd

7

# EXHIBIT 1

PAUL DAVID MAROTTA (CA State Bar No. 111812)
MEGAN JEANNE (CA State Bar No. 251294)
THE CORPORATE LAW GROUP
1342 ROLLINS ROAD
BURLINGAME, CA 94010
Telephone:     (650) 227-8000
Facsimile:      (650) 227-8001
Email:           paul@tclg.com
                   megan@tclg.com

TRENT J. WADDOUPS
CARR & WADDOUPS
ATTORNEYS AT LAW, LLC
8 EAST BROADWAY, SUITE 609
SALT LAKE CITY, UTAH  84111
Telephone:     (801) 363-0888
Facsimile:      (801) 363-8512
Email:           trent@cw-law.net

Attorneys for Defendant
MENTOR CAPITAL, INC., a California corporation

---

### UNITED STATES DISTRICT COURT FOR

### THE DISTRICT OF UTAH

---

| | |
|---|---|
| GENA GOLDEN, an individual and SUSAN GOLDEN, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> MENTOR CAPITAL, INC., a Delaware corporation, LABERTEW & ASSOCIATES, a Utah limited liability company, and MICHAEL L. LABERTEW, an individual, <br><br> Defendants. | CIVIL ACTION NO. 2:15-CV-00176-TC <br><br> Honorable Tena Campbell <br><br> DECLARATION OF CHET BILLINGSLEY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT WITH PREJUDICE |

I, Chet Billingsley, declare as follows:

    1.    I am the President, Chief Executive Officer, and Chairman of Defendant Mentor

Capital, Inc. ("Mentor").

    2.    The above case was filed on March 19, 2015 and Mentor was served with process

DECLARATION OF CHET BILLINGSLEY IN SUPPORT OF DEFENDANT MENTOR CAPITAL, INC.'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE

four months later, on July 16, 2015.

    3.    The matters stated herein are known to me personally, and if called and sworn as a witness I could competently testify thereto.

**No Privity with Plaintiffs**

    4.    Neither I nor Mentor ever sold any stock to the plaintiffs in this action.

    5.    In late February and early March, 2014 Mentor sold 105,000 shares of its common stock at a price of $1.95 per share for an aggregate investment of $204,750 to a person named Scott Van Rixel ("Van Rixel").

    6.    On March 11, 2014 Mentor common stock was trading at around $8.29 per share.

    7.    Mentor received a check on March 21, 2014 from Van Rixel in an envelope that was postmarked March 19, 2015.

    8.    The $204,750 sent to Mentor by Van Rixel, was sent right back to one of Van Rixel's companies under a larger, more complicated transaction involving Van Rixel, Mentor and others.

    9.    This larger transaction with Van Rixel is the subject of a separate legal action.

    10.    Van Rixel had asked on March 11, 2014 if he could "gift" some of the shares he was purchasing from Mentor to friends of his and I told him that he could.  Van Rixel had written to me:

> *"I wanted to know if I was able to put the shares I committed to in different peoples names as I would like to use them as thank you's [emphasis added] for peoples efforts in helping us make the decision to move forward with you.*
>
> *"...These individuals would most likely want to keep them for the long hall, (sic) as they were people who believe in me, you and what we are going to be doing together."*

    11.    I am informed and believe and thereon allege that Richard Golden, plaintiffs' husband and father respectively (mentioned in paragraph 8 of the Amended Complaint), is a lawyer who performed legal services for Van Rixel and one or more of this companies.

    12.    On or about March 23, 2014 Van Rixel told me that some of the "thank you" shares

- 2 -

were going to Gena Golden and Susan Golden.  That is the first time I heard their names.

13.     Now it seems that the shares transferred to the plaintiffs were actually paid for by the Goldens and were not, in fact, a gift from Van Rixel, as represented to me.

14.     Mentor had no communication with the plaintiffs before the stock sale to Van Rixel.

15.     Mentor did not contract with the plaintiffs.

16.     Mentor received no consideration from the plaintiffs.

17.     There was no transaction at all between Mentor and the plaintiffs.

18.     Van Rixel kept the fact that plaintiffs had paid him cash for the shares secret from Mentor and, in fact, has never admitted to me or Mentor that he received any payments from plaintiffs.

19.     I learned on or about July 30, 2014 that the Goldens had paid Van Rixel $146,250, through the issuance of two checks, both dated March 20, 2014.

**Scott Van Rixel**

20.     My understanding is that Scott Van Rixel was an "Affiliate" of Mentor in and about March, 2014 as defined under Rule 501(d) or Regulation D.  At that time we had an agreement to put him or a nominee of his on the Mentor Board of Directors.

21.     My further understanding is that, since Van Rixel was an Affiliate, shares gifted by him would be freely trading whereas shares sold by him would be subject to certain transfer restrictions.

22.     If this action is to continue, Mentor intends to bring a cross-claim against Van Rixel since he is central to the matters at issue in this action.

23.     It is possible that the correct target of plaintiff's ire is Van Rixel.

**The "Blanket Opinion Letter"**

24.     There is another reason why this action against Mentor is inappropriate.

25.     Plaintiff makes much of the fact that there was a so-called "blanket opinion letter" made public by Mentor in an effort to assist Mentor shareholders.

- 3 -

26.     The "Blanket Opinion Letter" is prominently mentioned in paragraphs 10, 11, 22, 23, 24, 33, 51, and 52 of the Amended Complaint.

27.     For example in paragraphs 33 and 34 plaintiffs allege that, "Defendants knew or should have known that the representations and omissions that were made in the BOL were materially false and misleading," and that plaintiffs reasonably relied on these representations and omissions.

28.     Clearly plaintiffs argue that they never would have bought the stock they bought from Van Rixel had the blanket opinion letter not given them some sort of comfort about one thing or another.

29.     Yet the blanket opinion letter was not made public in any way to Van Rixel, plaintiffs, Richard Golden, or anyone else until March 24th, five days after Van Rixel had already sent his check to Mentor, and four days after the March 20th date on the two checks from the Goldens to Van Rixel.

30.     In other words, the statements in the blanket opinion letter on which plaintiffs seek to hang their claims of fraud and misrepresentation and on which they base their entire lawsuit, *were made after they gave Van Rixel a check.*

31.     If anything is misrepresented here it is plaintiffs' demonstrably false claims of reliance on a blanket opinion letter that had not yet been published and was not yet available to them.

### Mentor Stock

32.     Mentor has over 4,000 shareholders and hundreds, if not thousands, of these shareholders have successfully navigated purchasing stock from Mentor; opening a brokerage account with a broker willing to accept Mentor stock; requesting, arranging, and obtaining their own individual opinion letters, if needed, to satisfy the transfer agent, brokerage, etc. of the propriety of their purchase of stock; using the blanket opinion letter; arranging for the deposit of that stock into their brokerage account; and effecting the sale or holding of their Mentor stock as

**DECLARATION OF CHET BILLINGSLEY IN SUPPORT OF DEFENDANT MENTOR CAPITAL, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE**

an investment.

33.     In this eco-system of heightened risk, skepticism, and rampant fraud, and the sometimes difficulty finding a broker willing to assist with a stock that is not well known, Mentor is sympathetic to the problems encountered by its stockholders, including plaintiffs here, but the problems apparently encountered by plaintiffs were unique to them, and the other dozens of Mentor stockholders of which I am aware were able to navigate those waters successfully.

34.     In short, just because plaintiffs were unsuccessful finding a broker to accept the Mentor stock they purchased from Van Rixel doesn't mean that it was impossible to do so; it just means that they were unable to do so for whatever reason.

**Investment Risk**

35.     My strong suspicion is that the plaintiffs or, while working as corporate counsel for Van Rixel, their father and husband respectively, (i) thought they saw a 'sure thing' and got greedy, (ii) were unprepared to accept true investment risk for their investment, and (iii) were misled in one or more ways by Van Rixel, as was Mentor.

**Conclusion**

36.     Mentor has no privity of any sort with plaintiffs and plaintiffs could not possibly have relied on a not-yet-published blanket opinion letter in making any decisions here, investment or otherwise.

37.     If this case is allowed to continue Mentor will seek to bring in Van Rixel and will determine exactly what the plaintiffs here relied on and did not rely on in deciding to give Van Rixel money.

I declare under penalty of perjury under the laws of the State of Utah and the laws of the United States of America that the foregoing is true and correct and that this Declaration was signed by the undersigned on August 6, 2015 at Ramona, California.

/s/ Chet Billingsley
Chet Billingsley

- 5 -

DECLARATION OF CHET BILLINGSLEY IN SUPPORT OF DEFENDANT MENTOR CAPITAL, INC.'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE

## CERTIFICATE OF SERVICE

I, Megan Jeanne, counsel for the above-named Defendant, hereby certify that the foregoing was filed via this Court's Electronic Case Filing system, which will cause a copy of the this filing to be forwarded to all counsel of record.

Date:  August 6, 2015

/s/ Megan Jeanne
Megan Jeanne

EXHIBIT B

**Sean N. Egan (# 7191)**
seannegan@sneganlaw.com
**Parkside Tower – Suite 950**
215 South State Street
Salt Lake City, Utah 84111-2374
Telephone:    (801) 363-5181
Facsimile:     (801) 363-5184
*Attorney for Plaintiffs*

---

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

---

| | | |
|---|---|---|
| GENA GOLDEN, an individual and SUSAN GOLDEN, an individual, | ) ) ) ) | **GOLDEN'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO MENTOR CAPITAL, INC.** |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| MENTOR CAPITAL, INC., a Delaware corporation, LABERTEW & ASSOCIATES, a Utah limited liability company, and MICHAEL L. LABERTEW, and individual | ) ) ) ) ) ) | Civil No. 2:15-CV-00176-TC Honorable Jill N. Parrish Magistrate Judge Brooke C. Wells |
| Defendants. | ) ) ) | **(Jury Trial Demanded)** |

---

Pursuant to Fed. R. Civ. P. 34, plaintiffs Gena Golden and Susan Golden ("Golden") respectfully serve their First Set of Requests for Production of Documents upon defendant Mentor Capital, Inc. ("Mentor"). Responses to these document requests shall be returned within twenty-eight (28) days of receipt of service to the law office of Sean N. Egan, Esq., 215 South State Street, Suite 950, Salt Lake City, Utah 84111.

## DEFINITIONS AND INSTRUCTIONS

1.      The term "Labertew" shall mean defendants Michael L. Labertew and Labertew & Associates, unless expressly stated otherwise, and any officer, director, shareholder, employee, agent or other representative of Labertew including, but not limited to, Michael L. Labertew, Esq.

2.      The term "Mentor" shall mean defendant Mentor Capital, Inc. unless expressly stated otherwise, and any officer, director, shareholder, employee, agent or other representative of Mentor.

3.      The terms "you," "your" and other similar pronouns shall refer to Mentor, unless expressly stated otherwise, and any principals, agents, representatives, successors or predecessors of Mentor or any other person or entity acting or believed to have acted on behalf of Mentor.

4.      The term "person" or "persons" shall mean and include natural persons, firms, partnerships, corporations, joint ventures or any other form of business or legal entity.

5.      All other terms used herein are to be construed as used or defined in the Amended Complaint in this action, or if not used or defined therein, in ordinary usage.

6.      Where an individual request calls for an answer which involves more than one part, each part of the answer shall be clearly set out so that it is understandable.

7.      To the extent you may lack the knowledge or ability to answer any request or part thereof completely, state the reason or reasons why you are unable to answer completely and provide the most complete response of which you are capable.

## DOCUMENTS TO BE PRODUCED

**REQUEST NO. 1:** Please produce all documents which refer to, describe, evidence or constitute the Blanket Opinion Letter dated March 13, 2014 signed by Michael L. Labertew, Esq. and Labertew & Associates. Please include in your response all notes, drafts and other communications regarding this document. ***Pursuant to Fed. R. Civ. P. 34(b)(1), plaintiffs demand that all responsive documents which are electronically stored be produced in their native electronic formats with all metadata intact.***

**REQUEST NO. 2:** Please produce all documents which refer to, describe, evidence or constitute transaction logs, archived copies, activity logs or similar documentation reflecting items posted on the Mentor Capital website from January 1, 2014 through June 30, 2014. ***Pursuant to Fed. R. Civ. P. 34(b)(1), plaintiffs demand that all responsive documents which are electronically stored be produced in their native electronic formats with all metadata intact.***

**REQUEST NO. 3:** Please produce all documents that support the assertions in paragraph 29 of the Declaration of Chester Billingsley dated August 6, 2015. ***Pursuant to Fed. R. Civ. P. 34(b)(1), plaintiffs demand that all responsive documents which are electronically stored be produced in their native electronic formats with all metadata intact.***

**REQUEST NO. 4:** Please produce all documents that support the assertions set forth in paragraph 32 of the Declaration of Chester Billingsley dated August 6, 2015. ***Pursuant to Fed. R. Civ. P. 34(b)(1), plaintiffs demand that all responsive documents which are electronically stored be produced in their native electronic formats with all metadata intact.***

**REQUEST NO. 5:** Please produce all documents which refer to, describe, evidence or constitute telephone records that identify communications between Mentor including, but not limited to, Chester Billingsley and Scott Van Rixel from February 1, 2014 through April 30, 2014. *Pursuant to Fed. R. Civ. P. 34(b)(1), plaintiffs demand that all responsive documents which are electronically stored be produced in their native electronic formats with all metadata intact.*

RESPECTFULLY SUBMITTED this **2nd** of October, 2015.

By _____

*Sean N. Egan*
*Attorney for Plaintiffs Gena Golden and*
*Susan Golden*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of October, 2015, a true and correct copy of the

foregoing **GOLDEN'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

**TO MENTOR CAPITAL, INC.** was  served upon the person(s) named below, by mailing to them

via U.S. Mail, postage fully-prepaid, a true and correct copy said document to the following:

**Michael L. Labertew, Esq.**
**Labertew & Associates**
4764 South 900 East, Suite 3
Salt Lake City, Utah 84117
michael@labertewlaw.com

**Trent J. Waddoups, Esq.**
**CARR & WADDOUPS**
8 East Broadway, Suite 609
Salt Lake City, Utah 84111
trent@cw-law.net

**Paul D. Marotta, Esq.**
**Megan Jeanne, Esq.**
**The Corporate Law Group**
1342 Rollins Road
Burlingame, CA 94010
paul@tclg.com
megan@tclg.com

By _____ /s/ Sean N. Egan _____