# EXHIBIT 5

Sean N. Egan (# 7191)
seannegan@sneganlaw.com
Parkside Tower – Suite 950
215 South State Street
Salt Lake City, Utah  84111-2374
Telephone:   (801) 363-5181
Facsimile:   (801) 363-5184
*Attorney for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF UTAH

| | |
|---|---|
| GENA GOLDEN, an individual and SUSAN GOLDEN, an individual, | **DECLARATION OF** **SCOTT VAN RIXEL** |
| Plaintiffs, | |
| vs. | Civil No. 2:15-CV-00176-TC |
| MENTOR CAPITAL, INC., a Delaware corporation, LABERTEW & ASSOCIATES, a Utah limited liability company, and Michael L. Labertew, an individual | Honorable Jill N. Parrish **(Jury Trial Demanded)** |
| Defendants. | |

I, SCOTT VAN RIXEL, declare:

1.      I an over the age of 21.  I have personal knowledge of the facts set forth in this declaration

2.      I am the CEO of Bhang Chocolate Company ("Bhang").  In early 2014, Bhang entered into a transaction with Mentor Capital, Inc.  Incidental to that transaction, Mentor,

through its CEO Chester Billingsley, alerted me to the opportunity to purchase Mentor common stock.

3.      I expressed an interest in doing that but I wanted more information.  On March 9, 2014, Billingsley sent me an email telling me that I needed to move quickly to purchase shares. A copy of that email is attached hereto as Exhibit A.

4.      The next day, March 10, 2014, Billingsley sent me and others an email answering certain questions we had about the stock Mentor was offering to sell us.  A copy of this email is attached hereto as Exhibit B.  In this email, Billingsley represented that the stock would be freely tradable.

5.      During this same time frame, I had several telephone discussions with Billingsley about a variety of matters.  With respect to the Mentor shares, I told him that others were going to want to purchase the Mentor shares or, alternatively, that I would gift those shares to certain people.  One of the people I mentioned who might purchase shares was Richard Golden.  I subsequently did purchase and gift Mentor shares to another person.

6.      Billingsley told me that I should be going out to get as many investors as possible. He said that anyone can purchase but that time was limited before he would have to withdraw the offer at the advantageous price.

7.      I also told Billingsley that because of the time deadline he established in his March 9 email, I was going to front money for the purchase of shares for any of the people I mentioned including Richard Golden.  Billingsley told me to collect the funds and just send it all

2

Decl - Van Rixel

in and he would sort out who got the shares later. I would keep whatever shares were not purchased by others. In this way I ensured that shares would be bought at the advantageous price Mentor was offering but that Mentor would know that others had actually purchased them.

8.      I shared the emails provided to me by Billingsley including the March 10 email, Exhibit B, with Richard Golden when he told me he was interested in purchasing shares.

9       On or about March 13, 2014, Richard told me that he wanted to buy shares for the benefit of his wife and daughter. We reached an agreement whereby Richard would pay me back the money I had advanced to Mentor on his behalf.

10.      Around that same time, I told Mentor that Richard was purchasing shares for his wife and daughter and gave them the information concerning where to send the shares and other correspondence from the company.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 2 day of September, 2015.

By _____
   SCOTT VAN RIXEL

3

# EXHIBIT 6

1 | CAMPEAU & THOMAS, A LAW CORPORATION
WAYNE H. THOMAS, #84009
2 | KATHRYN M. INFANTE, #64972
55 S. Market Street, Suite 1660
3 | San Jose, California   95113
Telephone:  (408) 295-9555
4
ATTORNEYS FOR
5 | DEBTOR-IN-POSSESSION

6

7 | UNITED STATES BANKRUPTCY COURT

8 | NORTHERN DISTRICT OF CALIFORNIA

9

10 | In re:                                        )   Case No. 98-56803-MM-11
                                                   )
11 | MAIN STREET AC, Inc.,                         )        CHAPTER 11
                                                   )
12 | dba Mentor Capital; fdba Main Street          )
   Athletic Clubs, Inc., Foxworthy Athletic       )
13 | Club, Meridian Athletic Club, Fremont         )
   Athletic Club, Second Street Athletic          )
14 | Club, and San Thomas Athletic                 )
   Club. Successor to: Tech Start and Mentor      )
15 | Investors-I, L.P.,                            )
                                                   )
16 | EIN 77-0395098                                )
                               Debtor.             )
17 | _____)

18 | **NOTICE OF ENTRY OF ORDER CONFIRMING PLAN**

19 | NOTICE IS HEREBY GIVEN that the attached ORDER CONFIRMING PLAN was signed by

20 | the Honorable Marilyn Morgan on January 11, 2000 and thereafter entered in the herein proceeding.

21 | Dated: January 13, 2000                    CAMPEAU & THOMAS, L.C.

22

23

24 | By:_____
                                              KATHRYN M. INFANTE
25 |                                          Attorneys for Debtor

26

27

28

Notice of Entry of Order

1    CAMPEAU & THOMAS, A LAW CORPORATION
     WAYNE H. THOMAS, #84009
2    KATHRYN M. INFANTE, #64972
     55 S. Market Street, Suite 1660
3    San Jose, California  95113
     Telephone:  (408) 295-9555
4    Facsimile:  (408) 295-6606

5    ATTORNEYS FOR
     DEBTOR-IN-POSSESSION

6

7

**FILED**

JAN 1 1 2000

KEENAN G. CASADY, CLERK
United States Bankruptcy Court
San Jose, California

8            UNITED STATES BANKRUPTCY COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   In re:                    )   Case No. 98-56803-MM-11

12   MAIN STREET AC, Inc.,      )       CHAPTER 11
                           )
13   dba Mentor Capital; fdba Main Street   )
     Athletic Clubs, Inc., Foxworthy Athletic   )
14   Club, Meridian Athletic Club, Fremont   )   DATE:    11 January 2000
     Athletic Club, Second Street Athletic    )   TIME:     2:30 p.m.
15   Club, and San Thomas Athletic Club.    )   PLACE:   280 S. First Street
     Successor to: Tech Start and Mentor     )            San Jose CA 95113
16   Investors-I, L.P.,               )   JUDGE: MARILYN MORGAN
                           )
17   EIN 77-0395098              )
                  Debtor.    )
18   _____ )

19                  **ORDER CONFIRMING PLAN**

20       The Debtor's Third Amended Plan under chapter 11 of the Bankruptcy Code filed by

21   Main Street AC, Inc. ("Debtor"), on 1 October 1999 ("Plan"), having been transmitted to

22   creditors and equity security holders; and

23       It having been determined after hearing on notice that the requirements for confirmation

24   set forth in 11 U.S.C. § 1129(a) have been satisfied, and good cause being shown:

25       IT IS ORDERED that:

26       The Plan is confirmed.  A copy of the Plan is attached hereto as Exhibit A and is

27   incorporated in this order except as may be set out specifically in this order.

28       IT IS FURTHER ORDERED that, Main Street AC, Inc. will be, after it will have paid

                                             ORDER CONFIRMING PLAN

1  all allowed claims for administrative expenses in full, vested with all of the assets of the
2  Debtor, subject to any liens on the property but free of all other claims of creditors and equity
3  security holders.

4      IT IS FURTHER ORDERED that, Debtor will be the Disbursing Agent (as that term is
5  defined in the Plan).

6      IT IS FURTHER ORDERED that, the Reorganized Debtor (as defined in the Plan) will
7  pay a quarterly fee to the United States Trustee, for deposit into the United States Treasury,
8  for each quarter (including any fraction thereof) until this case is converted, dismissed or
9  closed pursuant to a final decree, as required by 28 U.S.C. § 1930(a)(6).

10     IT IS FURTHER ORDERED that, not later than one month after 90 days after entry of
11 this order, the Debtor will file a post-confirmation status report, the purpose of which will be
12 to state the progress made toward substantial consummation of the confirmed Plan during the
13 90-day period after confirmation.  The report will include a statement of receipts and
14 disbursements, with the ending cash balance, for the entire 90-day period.  The report will
15 also include information sufficiently comprehensive to enable the court to determine:  (1)
16 whether the order confirming the Plan has become final; (2) whether deposits, if any,
17 required by the Plan have been distributed; (3) whether any property proposed by the Plan to
18 be transferred has been transferred; (4) whether the Reorganized Debtor has assumed the
19 business or the management of the property dealt with by the Plan; (5) whether delivery of
20 securities required to be distributed under the Plan have commenced or been completed; (6)
21 whether accrued fees due to the United States Trustee under 28 U.S.C. § 1930(a)(6) have
22 been paid; and (7) whether all motions, contested matters and adversary proceedings have
23 been finally resolved.  Further reports addressing these points must be filed every three
24 months thereafter until entry of a final decree, unless otherwise ordered by the court.

25     IT IS FURTHER ORDERED that, the Reorganized Debtor serve a copy of each report
26 mentioned in the previous paragraph, no later than the day upon which it is filed with the
27 court, upon the United States Trustee and other persons or entities as may request the reports
28

ORDER CONFIRMING PLAN

1   in writing by special notice filed with the court <u>and</u> served upon both the Debtor and its

2   counsel.

3        IT IS FURTHER ORDERED that Reorganized Debtor will deliver to Jerry Fey, as

4   trustee of the MFIT Trust the net proceeds from the estate's sale of its oil and gas interests.

5   Mr. Fey will deposit the funds in an account held in trust for the benefit of the Oil and Gas

6   Interests (as defined in the Plan) until he distributes the funds in accord with the election of

7   the individual holders of Oil and Gas Interests regarding the disposition of each holder's pro

8   rata share of the fund.

9        IT IS FURTHER ORDERED that, before the Reorganized Debtor distributes any of the

10   securities provided for in the Plan, it will (i) post on the Securities and Exchange

11   Commission's ("SEC's") EDGAR web page a complete copy of the Debtor's disclosure

12   statement which the court has approved after having been reviewed by the SEC, which

13   withheld comment, and (ii) file with the SEC a Form 8K as a cover sheet for the disclosure

14   statement (which might serve as the Reorganized Debtor's Form 10K filing after

15   confirmation of the Plan).  The Reorganized Debtor will use its reasonable best efforts to

16   bring and keep its periodic filings with the SEC current following entry of this order, and to

17   use reasonable best efforts to continue to have its common stock listed with the NASD

18   bulletin board system.

19

20   DATED: _____

21

22

23                            MARILYN MORGAN
                            UNITED STATES BANKRUPTCY JUDGE

24

25

26

27

28

                       3                   ORDER CONFIRMING PLAN

1  CAMPEAU & THOMAS, A LAW CORPORATION
WAYNE H. THOMAS, #84009

2  KATHRYN M. INFANTE, #64972
55 South Market Street, Suite 1660

3  San Jose, California 95113
Telephone:  (408)295-9555

4

ATTORNEY'S FOR

5  DEBTOR-IN-POSSESSION

**FILED**

SEP 3 0 1999

KEENAN G. CASADY, CLERK
United States Bankruptcy Court
San Jose, California

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10  In re                                          Chapter 11

11  Main Street AC, Inc.,
    dba      Mentor Capital,

12  fdba     Main Street Athletic Clubs, Inc.,     Case No.  98-56803-MM-11
             Foxworthy Athletic Club,

13           Meridian Athletic Club,
             Fremont Athletic Club,

14           Second Street Athletic Club, and      **DEBTOR'S THIRD AMENDED**
             San Thomas Athletic Club,             **PLAN OF REORGANIZATION**

15  successor to:
             Tech Start, and

16           Mentor Investors-I, L.P.,

17                    Debtor.

    Address:    346 Saratoga Avenue, Suite 201

18               San Jose, California 95129

19  Employer Identification
    Number 77-0395098

20

21        Main Street AC, Inc., the Debtor herein, proposes this Plan of Reorganization under

22  Chapter 11 of the Bankruptcy Code.

23

24                            **ARTICLE I**

25                          **DEFINITIONS**

26        **1.1    Defined Terms:** The following definitions apply in this Plan:

27



EXHIBIT A

**DEBTOR'S THIRD AMENDED**
**PLAN OF REORGANIZATION**

"Affiliate" means an entity which is an affiliate of a party in interest within the meaning of Section 101(2) of the Bankruptcy Code and every partnership and joint venture in which such entity is a general partner or joint venturer.

"Allowed Claim" or "Allowed Interest" means a claim against, or equity interest in, the Debtor to the extent that:

    A.    If the claim or interest arose or is deemed to have arisen on or before the Filing Date, (1) proof of the claim or interest either is timely filed or is deemed filed under Code §1111(a) and (2) the claim or interest either is not the subject of a timely filed objection or is allowed by a Final Order; or

    B.    If the claim arose after the Filing Date and is not deemed to have arisen on or before such date, (1) the claim is of a kind that can be voluntarily paid from the Debtor's estate without specific Bankruptcy Court approval and is so paid or (2) the claim has been allowed by a Final Order; and

    C.    Such claim is not subject to disallowance pursuant to §502(d) of the Code.

"ATM Nevada" means, collectively, those four limited liability companies known as ATM of Nevada, LLC; ATM-1 of Nevada, LLC; ATM-1A of Nevada, LLC; and ATM-2A of Nevada, LLC.

"ATM Members" means those members of ATM-2 of Nevada, LLC, and ATM-3 of Nevada, LLC, who sold their membership interests in such companies to the Debtor in exchange for beneficial interests under the promissory notes issued to ATM-2 of Nevada, LLC, and ATM-3 of Nevada, LLC, as their representatives, pursuant to the applicable Purchase Agreements.

"Ballot" means the form distributed to holders of claims and interests on which is to be stated an acceptance or rejection of this Plan.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California.

"Bar Date" means the date fixed as the last date for filing proofs of claims.

DEBTOR'S THIRD AMENDED
PLAN OF REORGANIZATION

1    "Bedro Notes" means the two promissory notes remaining out of four notes made by Bedro,

2    Inc., in favor of the Debtor which are pledged as collateral for the Debtor's obligations to Heller and

3    are currently in Heller's possession.

4        "B.L.R." means the Bankruptcy Local Rules of the Bankruptcy Court.

5        "Cash" means cash and cash equivalents including, but not limited to, checks and other

     similar forms of payment or exchange.

6        "Claims Reserve" means the federally insured, interest bearing deposit account to be

7    established by the Debtor and into which shall be deposited all funds of reserved on account of

8    Disputed Claims that will be entitled to payment in Cash if they are determined to be Allowed

9    Claims.

10

11       "Code" means the Bankruptcy Code contained in Title 11 of the United States Code.

12       "Committee" means the committee of creditors, if any, appointed in this case pursuant to

13   §1102 of the Code.

14       "Confirmation" means entry of the Confirmation Order.

15       "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan.

16       "Debtor" means Main Street AC, Inc.

17       "Disclosure Statement" means the disclosure statement relating to this Plan approved by the

18   Bankruptcy Court pursuant to §1125 of the Code.

19       "Disputed Claim" means a claim against the Debtor (a) which has been included in the

20   Debtor's schedules as disputed, contingent, or unliquidated, (b) as to which a proof of claim is filed

21   which does not assert a claim to a fixed, liquidated sum, or (c) to which an objection has been filed

22   which neither is the subject of a Final Order nor has been withdrawn.

23       "Disputed Interest" means an equity security interest in the Debtor (a) which has been

24   included in the Debtor's schedules as disputed, contingent, or unliquidated, or (b) to which an

25   objection has been filed which neither is the subject of a Final Order nor has been withdrawn.

26

27

                                    3              **DEBTOR'S THIRD AMENDED**
                                                   **PLAN OF REORGANIZATION**

"Distributions" means the payments of Cash and issuance of New Equity Securities to be distributed hereunder to holders of Allowed Claims and Allowed Interests.

"Effective Date" means the date on which the Debtor files the amendment to its articles of incorporation required by §6.7 hereof.

"Filing Date" means the date on which the petition to commence this case is filed.

"Final Order" means an order as to which (a) any appeal or petition for writ of certiorari that has been filed has been finally determined or dismissed, or (b) the time for appeal has expired and a notice of appeal has not been filed.

"Heller" means Heller First Capital Corporation.

"Golden West" means Golden West Unit Investment Trust.

"Investment Trusts" means, collectively, Golden West, Pac West, Sierra West and Sun West.

"Joint Participation Interests" means the undivided joint participation interests in the Petro Wells.

"New Equity Securities" means the New Common Stock and/or the Warrants to be issued under this Plan.

"New Common Stock" means the common stock of the Debtor to be issued pursuant to this Plan.

"Pac West" means, collectively, Pac West Unit Investment Trust and Pac West-2 Unit Investment Trust.

"Petro Participants" means the former holders of Joint Participation Interests in the Petro Wells who have executed agreements assigning such interests to the Petro Trust.

"Petro Trust" means the Petro Assignee Trust, a business trust formed to facilitate the loan by the Petro Participants to the Debtor which forms the basis for the Allowed Claim in Class A-5.

"Petro Wells" means the oil and gas wells located in Pottowatomie County, Oklahoma, and commonly known as Petro 16-1, Petro 16-2, Petro 16-3, Petro 16-4, Petro 16-5, and Petro 36-1.

"Plan" means this Plan of Reorganization together with any modifications hereto.

4

**DEBTOR'S THIRD AMENDED**
**PLAN OF REORGANIZATION**

"Plan Interest" means interest earned on funds held on deposit in the Claims Reserve.

"Pro Rata" means proportionately so that the ratio of the consideration distributed on account of an Allowed Claim or Allowed Interest in a class (or, as applicable, group of classes) to the consideration distributed on account of all Allowed Claims or Allowed Interests in the class (or, as applicable, group of classes) is the same as the ratio of such Allowed Claim or Allowed Interest to all Allowed Claims or Allowed Interests in the class(es).

"Purchase Agreement" means one of the Asset Purchase Agreements entered into between the Debtor and each of Sierra West, Pac West, Golden West, Sun West, the Petro Trust, ATM Nevada, and the ATM Members.

"Record Date" means the date fixed, by the Bankruptcy Court or otherwise, for identifying the holders of Allowed Interests based on the Debtor's outstanding common stock for purposes of voting on, and receiving distributions under, this Plan.

"Rules" means the Federal Rules of Bankruptcy Procedure.

"Series A Warrants" means the Series A Warrants to be issued hereunder granting the holder the right to acquire common stock of the Debtor at a price of $1.00 per share.

"Series B Warrants" means the Series B Warrants to be issued hereunder granting the holder the right to acquire common stock of the Debtor at a price of $3.00 per share.

"Series C Warrants" means the Series C Warrants to be issued hereunder granting the holder the right to acquire common stock of the Debtor at a price of $5.00 per share.

"Series D Warrants" means the Series D Warrants to be issued hereunder granting the holder the right to acquire common stock of the Debtor at a price of $7.00 per share.

"Sierra West" means, collectively, Sierra West Unit Investment Trust and Sierra West-A Unit Investment Trust.

"Sun West" means the Sun West Unit Investment Trust.

"Warrant" means, generally, a Series A Warrant, a Series B Warrant, a Series C Warrant, or a Series D Warrant.

5

**DEBTOR'S THIRD AMENDED
PLAN OF REORGANIZATION**

**1.2    Undefined Terms**:  A term used, but not defined, herein but defined in the Code or the Rules has the meaning given to that term in the Code or the Rules.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

All claims (except claims treated under Article III of this Plan) and interests are placed in the following classes.

**2.1    Secured Claims**

**Class A-1 (Heller)**:  Class A-1 consists of the Allowed Claim held by Heller in the amount of the outstanding principal balance of the Bedro Notes on the Effective Date.

**Class A-2 (ATM Nevada)**:  Class A-2 consists of the $310,000 secured Allowed Claim held by the six ATM entities that held $2,370,000 purchase money security interests in the promissory notes issued to purchase the ATM assets of the Debtor to the extent that it is secured by the assets, products and proceeds of the secured assets.

**Class A-3 (Oil Well Interests)**:  Class A-3  consists of the $11,285,000 secured Allowed Claim held by the seven entities that held purchase money security interests in the promissory notes issued to purchase the oil and gas assets of the Debtor to the extent that it is secured by the assets, products and proceeds of the secured assets.

**2.2    Priority Claims**

**Class B-1 (Employee Claims)**:  Class B-1 consists of unsecured Allowed Claims entitled to priority pursuant to §507(a)(3) or (4) of the Code.

**Class B-2 (Member Claims)**:  Class B-2 consists of unsecured Allowed Claims entitled to priority pursuant to §507(a)(6) of the Code.

**2.3    Class C  (Unsecured Claims)**:  Class C consists of unsecured Allowed Claims other than claims treated under Article III and claims in Classes B-1 and B-2.

**2.4    Equity Security Interests**

6

**DEBTOR'S THIRD AMENDED
PLAN OF REORGANIZATION**

**Class D-1 (Preferred Stock)**:  Class D-1 consists of the Allowed Interest held by the holder, on the Record Date, of the outstanding shares of the Debtor's preferred stock.

**Class D-2 (Common Stock):**  Class D-2 consists of the Allowed Interests held by the holders, on the Record Date, of the outstanding shares of the Debtor's common stock.

**Class D-3 ($1.00 Option Holders):**  Class D-3 consists of Allowed Interests based on rights to acquire common stock of the Debtor at a price of $1.00 per share.

**Class D-4 ($4.00 Option Holders):**  Class D-4 consists of Allowed Interests based on rights to acquire common stock of the Debtor at a price of $4.00 per share.

**Class D-5 ($6.00 Option Holders):**  Class D-5 consists of Allowed Interests based on rights to acquire common stock of the Debtor at a price of $6.00 per share.

**Class D-6 ($10.00 Option Holders):**  Class D-6 consists of Allowed Interests based on rights to acquire common stock of the Debtor at a price of $10.00 per share.

## ARTICLE III

### TREATMENT OF UNCLASSIFIED CLAIMS

**3.1**      **Treatment of Administrative Claims:**  Except to the extent that a particular holder agrees otherwise, the holders of Allowed Claims entitled to priority under §507(a)(1) of the Code (administrative claims, including fees due under 28 U.S.C. §1930 and claims under Certificates issued prior to the Effective Date) shall receive Cash in the amount of such claims on the Effective Date.  If such a claim has not been allowed on the Effective Date, the holder shall receive such payment within thirty days after the Debtor receives notice that such claim is an Allowed Claim, together with interest thereon from the Effective Date at the rate of eight percent (8%) per annum. Without limiting the generality of the foregoing, holders of such Allowed Claims arising from the provision to the Debtor of goods and services in the ordinary course of business shall receive the treatment provided for in their agreements with the Debtor; and

7

DEBTOR'S THIRD AMENDED
PLAN OF REORGANIZATION

**3.2**   **Election for Administrative Claimants:**  Holders of Allowed Claims entitled to priority under §507(a)(1) of the Code may elect to receive shares of New Common Stock in exchange for all or part of such claims at the rate of four shares for each dollar of such claims plus sixteen Warrants (four each of Series A, B, C and D), each entitling such holder to purchase an equivalent number of shares of the Debtor's common stock.

To receive such New Equity Securities, a holder must notify the Debtor in writing of its partial or complete election prior to the earlier of (a) ninety days after the Effective Date or (b) the holder's receipt of Cash on account of such portion of their claim.

**3.3**   **Treatment of Priority Governmental Claims.**  Except to the extent that a particular holder agrees otherwise, the holders of Allowed Claims entitled to priority under §507(a)(8) of the Code (claims by governmental units) shall receive one of the following treatments:

**(a)**   If the total of all such Allowed Claims is not greater than $22,000, Cash in the amount of such claims on the Effective Date.  If such a claim has not been allowed on the Effective Date, the holder shall receive such payment within thirty days after the Debtor receives notice that such claim is an Allowed Claim, together with interest thereon from the Effective Date at the rate of eight percent (8%) per annum.

**(b)**   If the total of all such Allowed Claims is greater than $22,000, quarterly Cash payments in the amount of $5,000 each, including interest payable at the rate provided under §6621 of the Internal Revenue Code, commencing on the 15th day of the third month which begins after the Effective Date and continuing on the same day of each third month thereafter until the twelfth quarter after the Effective Date, at which time all principal and interest on such Allowed Claims shall be due.

8

DEBTOR'S THIRD AMENDED
PLAN OF REORGANIZATION

## ARTICLE IV

## DESIGNATION AND TREATMENT OF UNIMPAIRED CLASSES

**4.1**   Class A-1 (Heller):  On account of its secured Allowed Claim in Class A, Heller shall receive a complete assignment of all of the Debtor's interest in the Bedro Notes.

## ARTICLE V

## TREATMENT OF IMPAIRED CLASSES

**5.1**   Satisfaction of Allowed Claims:  Holders of Allowed Claims and Allowed Interests in the following classes shall receive the Distributions set forth in this Article on account, and in complete satisfaction, of all such Allowed Claims and Allowed Interests.

**5.2**   Secured Claims:

Class A-1 (Heller): Secured claimant (Heller) is unimpaired and has possession of their collateral. Any residual unsatisfied claim amount by Heller will be included in Class C.

Class A-2 (ATM Nevada): Holders of secured Allowed Claims in Class A-2 will receive restricted stock, issued under normal securities regulations, at the rate of ten shares for each dollar of such claim to the extent of their security interest. Any residual unsatisfied claim amount by ATM Nevada will be included in Class C.

Class A-3 (Oil Well Interests): Holders of secured Allowed Claims in Class A-3 will receive 100% of the net proceeds from the sale of their secured California and Oklahoma well assets in full satisfaction of their claim. No claim amount will be included in Class C.

**DEBTOR'S THIRD AMENDED**
**PLAN OF REORGANIZATION**

### 5.3   Priority Claims

**Class B-1 (Employee Claims):**  Class B-1 is not impaired under the Plan.  Except to the extent a particular holder agrees otherwise, holders of Allowed Claims in Class B-1 shall receive Cash in the amount of such claims on the Effective Date.  If such a claim has not been allowed on the Effective Date, the holder shall receive such payment within thirty days after the Debtor receives notice that such claim is an Allowed Claim, together with interest thereon from the Effective Date at the rate of eight percent (8%) per annum.

**Class B-2 (Member Claims):**  Class B-2 is not impaired under the Plan.  Except to the extent a particular holder agrees otherwise, holders of Allowed Claims in Class B-2 shall receive Cash in the amount of such claims on the Effective Date.  If such a claim has not been allowed on the Effective Date, the holder shall receive such payment within thirty days after the Debtor receives notice that such claim is an Allowed Claim, together with interest thereon from the Effective Date at the rate of eight percent (8%) per annum.

**Election for Priority Claimants:**  Holders of Allowed Claims entitled to priority under §§507(a)(3),(4) and (6) of the Code may elect to receive shares of New Common Stock in exchange for all or part of such claims at the rate of four shares for each dollar of such claims plus sixteen Warrants (four each of Series A, B, C and D), each entitling such holder to purchase a like number of shares of the Debtor's common stock, provided that such holder notifies the Debtor in writing of its partial or complete election prior to the earlier of (a) ninety days after the Effective Date or (b) the holder's receipt of Cash on account of such portion of their claim.

### 5.4   Class C (General Unsecured Claims):

Holders of Allowed Claims in Class C shall receive one share of New Common Stock on account of each dollar of such claims and a Series B Warrant and a Series D Warrant each entitling the holder to purchase a like number of shares of the Debtor's common stock.

10

**DEBTOR'S THIRD AMENDED
PLAN OF REORGANIZATION**

### 5.5   Equity Security Interests

**Class D-1 (Preferred Stock):**  The holder of the Allowed Interest in Class D-1 shall receive, in exchange for such interest (a) a number of shares of New Common Stock equal to the number of shares of preferred stock held by such holder plus (b) Series C Warrants and Series D Warrants each entitling such holder to purchase a like number of shares of the Debtor's common stock.

**Class D-2 (Common Stock):**  Each holder of an Allowed Interest in Class D-2 shall retain its shares of the Debtor's common stock and shall receive Series D Warrants entitling such holder to purchase a number of additional shares of the Debtor's common stock equal to twice the number of shares held by such holder on the Record Date.

**Class D-3 ($1.00 Option Holders):**  Holders of Allowed Interests in Class D-3 shall receive, in exchange for such interests, Series A Warrants and Series D Warrants each to acquire the same number of shares of New Common Stock as they are entitled to acquire under their existing options and/or warrants.

**Class D-4 ($4.00 Option Holders):**  Holders of Allowed Interests in Class D-4 shall receive, in exchange for such interests, Series B Warrants and Series D Warrants each to acquire the same number of shares of New Common Stock as they are entitled to acquire under their existing options and/or warrants.

**Class D-5 ($6.00 Option Holders):**  Holders of Allowed Interests in Class D-5 shall receive, in exchange for such interests, Series C Warrants and Series D Warrants each to acquire the same number of shares of New Common Stock as they are entitled to acquire under their existing options and/or warrants.

**Class D-6 ($10.00 Option Holders):**  Holders of Allowed Interests in Class D-6 shall receive, in exchange for such interests, Series D Warrants to acquire twice the number of shares of New Common Stock as they are entitled to acquire under their existing options and/or warrants.

**DEBTOR'S THIRD AMENDED
PLAN OF REORGANIZATION**

**ARTICLE VI**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

6.1     Completion of Heller Note Assignment:  On the occurrence of the Effective Date the assignment of the Bedbro Notes, now in the possession of Heller, will by irrevocably final in full satisfaction of the secured portion of Heller's secured Allowed Claim.

6.2     Transfer of Net Sale Proceeds from Oil Well Interests:  Prior to the Effective Date, the Debtor will deposit the net proceeds from the sale of the Oklahoma and California well interests into an investor trust for the *pro rata* economic interest of those investors. 22.08% of these net sale proceeds would be due Wilson or Morris, but will be retained by the Debtor in partial satisfaction of their settlement with the Debtor.

6.3     Issuance of Other Equity Securities:  Not later than sixty days after the Effective Date, the Debtor shall issue the restricted shares to be issued on account of Allowed Claims in Class A-2 and New Equity Securities to be issued on account of Allowed Claims in Class C and Allowed Interests in Classes D-1, D-2, D-3, D-4, D-5, and D-6.

6.4     Transferability of New Equity Securities:

(a)     Securities Exchanged for Claims and Interests:  To the extent provided in §1145 of the Code, the New Equity Securities (not the restricted shares issued to ATM Nevada) being issued to the holders of claims and interests under this Plan, and all securities issued in exchange therefor or on conversion thereof, shall be exempt from the registration requirements of the Securities Act of 1933, as amended, and any state or local laws requiring the registration for offer or sale of a security or registration or licensing of an issuer, underwriter or dealer.

(b)     Other New Equity Securities:  All other New Equity Securities issued hereunder shall be issued only upon compliance with applicable state and federal securities laws. None of such securities may be transferred by the recipient thereof unless registered and/or qualified under such laws or the recipient provides the Debtor with an opinion of counsel acceptable to the

12                              **DEBTOR'S THIRD AMENDED**
                                **PLAN OF REORGANIZATION**

Debtor that an exemption from the registration or qualification requirements is available to such recipient.

(c)     Contractual Restrictions on Transfer:  In addition, without limiting the generality of the foregoing, all shares of New Common Stock issued under this Plan (not shares issued upon exercise of Warrants) may not be transferred without the prior written consent of the Debtor for eighteen months following the Effective Date.  Without limiting the generality of the foregoing, each calendar month following the Effective Date, the Debtor may (but is not obligated to) authorize the transfer of ten percent (10%) or some lesser percentage or lesser fixed amount of the New Common Stock subject to this restriction which is held by a person as of the beginning of such month, if the person delivers the certificate evidencing such shares to the Debtor with a written request for removal of the restriction.

6.5     Terms of Warrants:

(a)     Duration of Warrants:  All Warrants shall expire on 5:00 p.m., Pacific Time, on the 485th day following Confirmation unless redeemed by the Debtor or exercised prior thereto, unless the expiration date for Warrants held by a particular holder is extended by the Debtor in writing.

(b)     Time and Manner of Exercise:  Warrants shall be considered exercised at the time the Debtor actually receives written notice of the holder's election to exercise its Warrants, provided that such notice shall be effective only if the Debtor receives full payment of the exercise price in good funds within ten days after receipt of the notice of election.

(c)     Redemption of Warrants:  The Debtor shall have the right to redeem all or a portion of one or more series of Warrants on the following terms:

(i)     Redemption Price:  The redemption price shall be ten cents (10¢) for each share purchasable upon exercise of the Warrants.

(ii)     Manner of Redemption:  Redemption shall be effected by giving written notice to the address last known by the debtor for the holder not less than thirty days prior

13                                DEBTOR'S THIRD AMENDED
                                  PLAN OF REORGANIZATION

to the intended redemption date (which date shall be stated in the notice). Holders of Warrants may exercise their Warrants at any time prior to 5:00 p.m., Pacific Time, on the redemption date stated in the Debtor's notice.

    (iii) **Time of Redemption:**  The Debtor may redeem Warrants in a particular series only when the closing bid price on the last trading day prior to giving notice of redemption for the shares receivable upon exercise of the Warrants in that series is at least $1.00 or at least 100% greater than the exercise price for that series of Warrants.

    (iv) **Partial Redemption:**  Subject to the limitation set forth in the preceding subsection, the Debtor may select one or more series of Warrants for a partial redemption and may redeem less than all Warrants in a particular series; however, any partial redemption shall be made Pro Rata among the holders of Warrants of any particular series.

    (v) **Conversion of Unredeemed Warrants:**  All Warrants as to which the Debtor issued a notice of its intention to redeem that remain unexcercised and unredeemed after the redemption date stated in the notice shall be automatically converted to a Warrant of the series which has the next highest exercise price.

  6.6 **Disputed Claims and Interests**

    (a) **Reserve for Disputed Claims and Interests:**  When any Distribution is to be made to holders of claims entitled to payment in Cash, the Debtor shall deposit into the Claims Reserve any amount that would be distributed to the holder of a Disputed Claim if it were an Allowed Claim. When any Distribution is to be made to holders of claims or interests entitled to New Equity Securities, the Debtor shall reserve the number of shares that would be distributed to the holder of a Disputed Claim or Disputed Interest if it were an Allowed Claim or Allowed Interest or the number of shares that would be issuable on exercise of a Warrant that would be distributed to the holder of such a Disputed Claim or Disputed Interest. Such amount shall be retained in the Claims Reserve, or the shares shall continue to be reserved, until the allowability of such claim is resolved.

**DEBTOR'S THIRD AMENDED
PLAN OF REORGANIZATION**

(b)     **Determination of Reserve Amount:**  The amount withheld, or number of shares reserved, shall be determined on the basis of (a) the amount claimed by the holder in its proof of claim filed in this case if such proof of claim asserts a fixed, liquidated sum, (b) the amount upon which the parties to the dispute agree, or (c) the amount estimated by the Bankruptcy Court after notice and an opportunity for a hearing under B.L.R. 9014-1(b).

(c)     Distributions on Disputed Claims and Interests:

(i)     After a Disputed Claim that would be entitled to Cash is resolved:

(A)     To the extent the Disputed Claim is determined to be an Allowed Claim after one or more Distributions have been made hereunder, then within 30 days after the Debtor has notice that such claim has become an Allowed Claim, the Debtor shall distribute Cash to the holder from the Claims Reserve in an amount equal to (1) the Distribution the holder would have received if the claim had been an Allowed Claim at the time such Distributions were made and (2) Plan Interest thereon, accruing from the date each such Distribution would have been made; and

(B)     Funds in the Claims Reserve not paid to the holder of the claim shall be returned to the Debtor's general account.

(ii)     After a Disputed Claim or Disputed Interest entitled to a Distribution of New Equity Securities is resolved:

(A)     To the extent the Disputed Claim or Disputed Interest is determined to be an Allowed Claim or Allowed Interest after one or more Distributions have been made hereunder, then within 30 days after the Debtor has notice that such claim or interest has become an Allowed Claim or Allowed Interest, the Debtor shall distribute the New Equity Securities which the holder is entitled to receive; and

(B)     The common stock reserved on account thereof (and/or Warrants, as applicable) to which the holder is not entitled shall be distributed Pro Rata to the holders of Allowed Claims or Allowed Interests in the class of which the Disputed Claim or

15

**DEBTOR'S THIRD AMENDED
PLAN OF REORGANIZATION**

Disputed Interest is a member if such class is entitled to Pro Rata Distributions from a fixed block of New Equity Securities; otherwise such reserved shares shall be released from reserve and deemed thereafter to be authorized, unissued, and unreserved shares available for issuance as the Debtor deems appropriate.

**6.7     Amendment of Articles of Incorporation:**  Not later than 120 days after Confirmation, the Debtor shall file amendments to its articles of incorporation which provide for:

**(a)**     Authorization of sufficient shares of its common stock to permit issuance of the New Common Stock, the shares issuable on exercise of all Warrants to be issued under this Plan, and such additional common stock as the Debtor considers appropriate to have available for future transactions; and

**(b)**     Prohibit the issuance of nonvoting equity securities.

**6.8     Validity of Corporate Actions:**  Pursuant to §1400 of the California Corporations Code, Confirmation shall constitute due authorization required for the full validity, enforceability, and effectiveness of all transactions provided for in this Plan, notwithstanding any provisions of the California General Corporation Law which would otherwise require approval of such transactions by the Debtor's board of directors, shareholders, or otherwise.  Confirmation shall constitute authorization for the Debtor's Responsible Individual designated under B.L.R. 4002-1 to take all actions and execute, deliver and file all certificates, notices, and other documents as he deems necessary or appropriate to consummate the transactions provided for in this Plan, including certificates of amendment of the Debtor's Articles of Incorporation.

**6.9     Selection of Directors:**  At Confirmation, the following individuals shall be the directors of the Debtor:

| | |
|---|---|
| Chester Billingsley | Robert Meyer |
| Gilbert McCord | Ernest Williams |
| Stan Shaul | |

At the first regular meeting of shareholders following Confirmation, directors shall be elected in accordance with the Debtor's articles of incorporation and bylaws.

16                          **DEBTOR'S THIRD AMENDED
PLAN OF REORGANIZATION**

## ARTICLE VII

## DISCHARGE

Except as otherwise provided herein or in the Confirmation Order, Confirmation shall discharge the Debtor from all debts that arose, or are treated under the Code as if they had arisen, at any time before Confirmation. The discharge shall be effective as to each debt regardless of whether a proof of claim therefor is filed or deemed filed, whether the claim is an Allowed Claim, or whether the holder thereof accepts the Plan.

## ARTICLE VIII

## RETENTION, SETTLEMENT, AND WAIVER OF CLAIMS

**8.1** <u>Retention and Enforcement of Claims.</u> The Debtor shall retain and may enforce claims held by it or its estate, including claims arising from the power, under the Code or otherwise, to avoid and recover transfers.

**8.2** <u>Settlement of Objections to Claims:</u> If a party has timely filed an objection to a claim, the party who filed the objection and the holder of the disputed claim may enter into a written settlement agreement to compromise such claim, which agreement, when filed with the Bankruptcy Court, will have the force and effect of a Final Order.

**8.3** <u>Stale Checks and Claim Waiver:</u> All checks constituting disbursement of amounts due under the Plan shall be drawn so as to become automatically void if not cashed or otherwise negotiated within 90 days after issuance. If any such check becomes void, the claim with respect to which the check was issued shall be deemed withdrawn, and the funds corresponding to the withdrawn claim shall be disbursed according to the Plan.

Any New Common Stock and proceeds from the redemption of Warrants that are not deliverable after issuance or receipt and that have not been claimed 90 days after five press releases on issuance and the redemption of Warrants have been made, will be retired into the Debtor's treasury. The claim with respect to which the New Equity Securities was issued shall be

17                          **DEBTOR'S THIRD AMENDED**
                            **PLAN OF REORGANIZATION**

deemed withdrawn, and the funds corresponding to the withdrawn claim shall be disbursed according to the Plan.

## ARTICLE IX

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except for the executory contracts and unexpired leases described in Exhibit A or in an amendment to Exhibit A which may be filed before Confirmation, the Debtor hereby rejects all executory contracts (which include warrants, options, and other rights to purchase shares of the Debtor's stock) and unexpired leases to which it was a party on the Filing Date. On the Effective Date, the executory contracts and unexpired leases described in such Exhibit A shall be assumed by the Debtor.

## ARTICLE X

## REVESTING

**10.1    Revesting of Property:** Except as provided in this Plan or in the Confirmation Order, on the Effective Date, the Debtor shall be vested with all of the property of its estate free and clear of all claims, liens, charges and other interests of creditors arising prior to the Filing Date. All property of the estate shall remain property of the estate within the meaning of §541 of the Code, and the automatic stay imposed by §362 of the Code shall remain in force, until the Effective Date.

**10.2    Avoidance of Liens:** Without limiting the generality of the preceding section, on the Effective Date, the Debtor's property shall be free of any liens in favor of parties who do not hold secured Allowed Claims within the meaning of §506(a) of the Code, including the following:

**(a)    Heller:** The security interest asserted by Heller in any assets of the Debtor other than the Bedro Notes.

18                          **DEBTOR'S THIRD AMENDED
                             PLAN OF REORGANIZATION**

(b)   **Orders of Examination:**  Any liens asserted by parties who, in litigation commenced prior to the Filing Date, obtained orders of examination of the Debtor under California CCP §708.110 or 708.120 or otherwise, including:

(i)   The Miner Group, d/b/a Olympic Graphics Industries;

(ii)   Value Business Products, Inc.

(c)   **Notices of Judgment Liens:**  Any liens asserted by parties who filed financing statements or notices of judgment liens with the California Secretary of State after the date on which Heller filed its financing statements, including a notice of judgment lien filed by Re-New Sealers, Inc.

**10.3   Operation of Business:**  Upon Confirmation, the Debtor shall operate its business free of any restrictions of the Code, the Rules, or the Bankruptcy Court.

## ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding Confirmation, the Bankruptcy Court shall retain jurisdiction to enforce the provisions, purposes, and intent of this Plan including, without limitation:

A.   Determination of the allowability of claims and interests;

B.   Approval of the assumption, assignment, or rejection of any executory contract or unexpired lease of the Debtor;

C.   Determination of requests for payment entitled to priority under §507(a)(1) of the Bankruptcy Code, including compensation of parties entitled thereto;

D.   Resolution of controversies and disputes regarding interpretation of this Plan;

E.   Implementation of the provisions of this Plan and entry of orders in aid of confirmation of this Plan, including, without limitation, appropriate orders to protect the Debtor from creditor action;

F.   Modification of the Plan;

**DEBTOR'S THIRD AMENDED
PLAN OF REORGANIZATION**

G.  Adjudication of any causes of action, including avoiding powers actions, brought by the Debtor; and

H.  Entry of a final decree closing this case.

## ARTICLE XII

## REQUEST FOR CONFIRMATION

If necessary, the Debtor requests Confirmation of this Plan pursuant to §1129(b) of the Code.

Dated:  September 30, 1999

Main Street AC, Inc.

By: _____
Chester Billingsley
Chief Executive Officer

Campeau & Thomas
A Law Corporation,
Attorneys for Debtor-in-Possession

ORIGINAL SIGNED BY

By: _____
Wayne Thomas

20

**DEBTOR'S THIRD AMENDED
PLAN OF REORGANIZATION**

**EXHIBIT A**

**EXECUTORY CONTRACTS TO BE ASSUMED BY THE DEBTOR**

1.   Lease for premises at 346 Saratoga Avenue, San Jose, California.

2.   Hired Service Provider Contract with Nevada ATM including Service Agreement and network Fee Licensing Agreement.

3.   Location Agreements for the ATM Nevada automated teller machines.

4.   Any other leases, contracts and agreements necessary for the continued operation of the ATM business acquired pursuant to the Purchase Agreements.

5.   Indemnification Agreement for corporate agents and all other agreements memorialized in the Corporate Minutes Book not in conflict with the Plan.

6.   The Attorney - Client Fee Contract with Campeau & Thomas.

**DEBTOR'S THIRD AMENDED**
**PLAN OF REORGANIZATION**

1 CAMPEAU & THOMAS, A LAW CORPORATION
  WAYNE H. THOMAS, #84009
2 KATHRYN M. INFANTE, #64972
  55 S. Market Street, Suite 1660
3 San Jose, California 95113
  Telephone: (408) 295-9555
4 Facsimile: (408) 295-6606

5 ATTORNEYS FOR
  DEBTOR-IN-POSSESSION
6



7

8                    UNITED STATES BANKRUPTCY COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 In re:                          )   Case No. 98-56803-MM-11
                                   )
12 MAIN STREET AC, Inc.,           )      CHAPTER 11
                                   )
13 dba Mentor Capital; fdba Main Street )
   Athletic Clubs, Inc., Foxworthy Athletic )  DATE:   January 11, 2000
14 Club, Meridian Athletic Club, Fremont )   TIME:   2:30 p.m.
   Athletic Club, Second Street Athletic )   PLACE:  280 S. First Street
15 Club, and San Thomas Athletic Club, )          San Jose CA 95113
   Successor to: Tech Start and Mentor )    JUDGE: MARILYN MORGAN
16 Investors-I, L.P.,               )
                                   )
17 EIN 77-0395098                   )
                         Debtor.    )
18 _____ )

19      SUPPLEMENT TO DEBTOR'S THIRD AMENDED PLAN OF
20         REORGANIZATION FILED OCTOBER 1, 1999

21      Main Street AC, Inc., the debtor and debtor-in-possession herein (the "Debtor") hereby

22 supplements its Third Amended Plan of Reorganization (the "Plan") to clarify the information set

23 forth in Articles X and XI of the Plan.

24      Article X (Revesting), paragraph 10.1, is supplemented to state that upon the Effective Date or

25 payment of all Administrative Expenses, whichever is later, the Debtor shall be vested with all

26 property of its estate free and clear of all claims, liens, charges and other interests of creditors arising

27 prior to the Filing Date.

28      Article XI (Retention of Jurisdiction), paragraph A, is supplemented to state that the court

retains jurisdiction to determine the allowability of claims and interests, including payment of

Plan Supplement

1   administrative expenses.

2   Dated: December 2, 1999

MAIN STREET A.C., INC.

By: _____
Chester Billingsley
Chief Executive Officer

CAMPEAU & THOMAS

By: _____
Wayne Thomas
Kathryn M. Infante
Attorneys for the Debtor

F:\HOME\MainStreetPlanIII.sup

Plan Supplement                    2

1 CAMPEAU & THOMAS, a L.C.          CASE NAME:  MAIN STREET AC. INC.
  WAYNE H. THOMAS, # 84009
2 KATHRYN M. INFANTE, # 64972       Case No.  98-56803-MM-11
  55 So. Market Street #1660
3 San Jose, CA  95113
  TEL. (408) 295-9555
4

5              UNITED STATES BANKRUPTCY COURT
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
6

7                    CERTIFICATE OF SERVICE

8      I declare that I am employed in the County of Santa Clara, California; I am over the age of
  18 years and not a party to the within entitled cause; my business address is 55 S. Market Street,
9 Suite 1660, San Jose, California 94113.  On January 14, 2000, I served the following documents:

10 NOTICE OF ENTRY OF ORDER CONFIRMING PLAN

11 BY MAIL, or as otherwise stated below, addressed to:

12 United States Trustee

13 Robert Gebhard    ( via hand delivery)
   U. S. Trustee                         Arthur Richardson
14 280 So. First Street                  Securities & Exchange Commission
   San Jose, CA  95113                   5670 Wilshire Blvd., #1100
15                                        Los Angeles, CA 90036
   Michael A. Berman, Esq.
16 Securities & Exchange Commission
   450 Fifth Street, N.W.
17 Washington, D.C. 20549

18 Members of the Creditors Committee

19 Robert B. Meyer                        Murrel Public Relations
   Small Business Resources              Attn: Guy Murrel
20 of America, Inc.                       5412 Idylwild Trail, #104
   Barter News Magazine                  Boulder, CO 80301
21 c/o. P.O. Box 3024
   Mission Viejo, CA 92690
22

23

24

25

26

27

28

1  Special Notice

2  Heller First Capital Corp.                          Joseph M. Morrill, Esq.
   c/o David Wiseblood, Esq.                           Ropers, Majeski, Kohn & Bentley
3  Jeffer, Mangels, Butler & Marmaro                   80 N. First Street
   One Sansom Street, 12th Floor                       San Jose, CA 95113
4  San Francisco, CA 94104
                                                       Mark Jones, Esq.
5  Marc R. Tow, Esq.                                   110 S. Montclair Street, #106
   re: AMT of Nevada, et al.                           Bakersfield, CA 93309
6  3900 Birch Street, #113
   Newport Beach, CA 92660                             Eugene L. Hudson
7                                                      1570 Hamilton Associates
                                                       100–B Frederick Street
8                                                      Santa Cruz, CA 95062

9                                                      Harry C. Joyce
                                                       2587 NC 8 Hwy N.
10                                                     Danbury, NC 27016

11 John L. Smaha, Esq.                                 Jim Young Insurance Services
   Jeffrey L. Anastas, Esq.                            1355 E. Bradford Parkway, Suite E
12 Smaha, Swysgood & Daley                             Fremont at Primrose
   8910 University Center Lane                         Springfield, Missouri 65804-7359
13 Suite 400
   San Diego, CA 92122                                 Jimmy S. Cuevas
14                                                     23356 Pinecrest Road
   Commercial Credit Recovery Serv.                    Saucier, MS 39574
15 c/o Michael N. Berke, Esq.
   468 Pennsfield Place, Second Floor
16 Thousand Oaks, CA 91360

17 Ronald L. Ibbetson
   P.O. Box 5535
18 Yuma, AZ 85366

19 Mary E. Recupero
   145 Cielo Lane, Apt. 203
20 Novato, CA 94949

21 Mrs. Jane Schoepke
   612 2nd North Street
22 Wenona, IL 61377-0106

23 I am familiar with the firm's practice of collecting and processing correspondence for mailing. Under
   that practice it would be deposited with the U. S. Postal Service on that same day with postage
24 thereon fully prepaid at San Jose, California, in the ordinary course of business. I am aware that on
   motion of the party served, service is presumed invalid if postal cancellation date or postage meter
25 date is more than one day after the date of deposit for mailing in affidavit I declare under penalty of
   perjury, under the laws of California, that the foregoing is true and correct.

26
     Executed January 14, 2000 at San Jose, California.
27
                                                       _____
28                                                     Lisa Murphy

# EXHIBIT 7

## Chet Billingsley

**From:** Chet Billingsley
**Sent:** Wednesday, August 06, 2014 4:59 PM
**To:** Adam F. Golden; Tod Anthony DiTommaso, Esq.
**Cc:** Richard A. Golden
**Subject:** RE: MNTR Stock - Susan & Gena Golden - Opinion Letter

**Tod  -- Information on the Susan and Gena Golden MNTR share certificates follow within the text of your copied email below:**

I have reviewed the information you have provided.  It is my understanding that the shares were acquired when Susan and Gina exercised a warrant received in connection with the 1998 bankruptcy proceedings of Mentor Capital, Inc.  As such, issuance of the warrant was exempt from registration pursuant to 11 U.S.C. 1145(a) and exercise of the warrant resulted in freely trading stock pursuant to 11 USC 1145(a)(2).

Please confirm that the above fact is true **[ Confirmed ]** and provide me with the date that the warrant was obtained **[ March 26, 2014 & Simultaneously Exercised]**. I will then prepare a shareholder declaration affirming the above fact as well as their non-affiliate status **[The are not and have not been affiliates]..**

It would be helpful if you can forward a copy of the warrant certificate.**[ Gena Golden WB-1684 for 18,687 shares + WD-2025 for 6,313 shares = 25,000shares ] / [ Susan Golden WB-1685 for 37,375 shares + WB-2026 for 12,625 shares = 50,000 shares ] [ A copy of the 4 warrant certificates is being sent from the Warrant Transfer Agent  here and will be forwarded to Tod when it arrives and is verified by MNTR ]** warrant agreement **[ The "Warrant Agreement" is the Court Order as manifest in the 130 page  Plan of Reorganization & Disclos**···             t found at the company web site under Investors Corner  >>> Disclosures  >>> Bott⌐                          ımarized in the Blanket Opinion Letter found at the top of that same page.  ]   , and/o                          ⌐rant.  **[ The election to exercise the** warrant was completed on March 10, 2014 by Scott                          ıext day he asked if he could designate others to receive his shared. Soon therea:                          ¦usan and Gena Golden.  We said Yes and issued separate warrant certificates to each                          ınvenience Scott issued a single check to pay for all shares and then he received che                          ırse him at cost a few days later.  We have received copies of all such checks  ---                          **]**

**Note: Because the shares are freely trading and were** ⌐                       ¬veu at cost, I guess a different but similar **1145 exemption could apply as to a secondary resale** ⌐ɔ.ock from Scott to the Goldens. **However, my investigation indicates that MNTR staff and the Warrant Transfer Agent treated it as an original purchase, not a resale, right from the onset.**

**We will forward a copy of the 4 separate warrants when they arrive.**

**3 email copies on election to exercise follow directly below.**

Mentor - 000126

1