Michael L. Labertew - 5501
LABERTEW & ASSOCIATES, LLC
1640 Creek Side Lane
Park City, Utah  84098
Telephone: (801) 424-3555
Email: michael@labertewlaw.com

*Attorneys for Defendant Labertew & Associates, LLC
and pro se for Michael Labertew*

---

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF UTAH

---

| | | |
|---|---|---|
| GENA GOLDEN, an individual and SUSAN GOLDEN, an individual, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | |
| MENTOR CAPITAL, INC., a Delaware corporation, LABERTEW & ASSOCIATES, a Utah limited liability company, and MICHAEL L. LABERTEW, an individual, | ) ) ) ) ) ) | DEFENDANTS LABERTEW & ASSOCIATES AND MICHAEL L. LABERTEW'S MOTION FOR SUMMARY ADJUDICATION AND/OR FOR SUMMARY JUDGMENT |
| Defendants. | ) ) | |
| MENTOR CAPITAL, INC., a Delaware corporation, | ) ) | CIVIL ACTION NO. 2:15-CV-00176-JNP-BCW |
| Third-Party Plaintiff, | ) ) | Honorable Jill N. Parrish |
| v. | ) ) | Magistrate Brooke C. Wells |
| RICHARD GOLDEN, an individual, and SCOTT VAN RIXEL, an individual, | ) ) ) | |
| Third-Party Defendants. | ) ) | |

**COME NOW**, Defendants Labertew & Associates, LLC and Michael L. Labertew (the

"Labertew Defendants"), pursuant to Rule12(c) and Rule 56 of the Federal Rules of Civil

Procedure, and hereby move the Court for judgment on the pleadings as to Counts I and V of the

Plaintiffs' Second Amended Complaint and for summary judgment as to Counts II, III and IV in

the Second Amended Complaint (hereinafter referred to as "SAC").  As grounds therefore, the Labertew Defendants would show the Court that there are no disputed issues of material fact as to any of the causes of action pled by the Plaintiffs and these defendants are entitled to judgment as a matter of law.

## I.        INTRODUCTION

Plaintiffs allege in their Second Amended Complaint that, "Richard Golden…was attempting to locate a suitable investment" for them [SAC, page 3, ¶8] and that, "Richard learned of an opportunity to invest with Mentor."   [SAC, page 3, ¶9] Plaintiffs themselves had nothing to do with buying Mentor stock, and the assertions in the Second Amended Complaint that they did so are false. Instead, on March 13, 2014, Richard Golden determined to buy the Mentor Capital shares at issue here for the benefit of the Plaintiffs and informed Mr. Van Rixel of this determination.

According to the Plaintiffs, after this determination was made on March 13, they purchased the shares on March 20, 2014 based upon statements contained in a "Blanket Opinion Letter" (the "BOL") "that had been posted on the Mentor website." [SAC, page 3, ¶10] However, the BOL was not posted on Mentor's website or made public until March 23, 2014. As such, Plaintiffs did not—and could not—have determined to purchase the shares on March 13, nor could they have purchased the shares on March 20, because of any statement or representation contained in the BOL.

The crux of Plaintiffs' claims against the Labertew Defendants is that the BOL "posted on the Mentor website" [SAC, page 3, ¶10] contained certain "false, misleading, and inaccurate statements".  [SAC, page 4, ¶12] The Labertew Defendants did not sell, convey, or transfer any shares to the Plaintiffs, and the only statements or representations of the Labertew Defendants at

issue in this case are those contained in the BOL.  Since Plaintiffs' representative, Richard

Golden, determined to purchase the shares—and completed his purchase of shares—from Mr.

Van Rixel **before** the BOL was posted on Mentor's website, and **before** the BOL was ever

disclosed to the Plaintiffs or the public, the Plaintiffs did not rely on, nor were they otherwise

influenced in their purchase of the Mentor shares by any statements contained in, the BOL.

Plaintiffs filed and served their Second Amended Complaint in this action on September

29, 2015, and asserted five (5) causes of action against the Labertew Defendants.  However,

based upon the indisputable material facts present here, Plaintiffs cannot recover for any of these

causes of action against these Defendants.  Instead, as matters of law and pursuant to the

discussion below, the Labertew Defendants are entitled to summary adjudication under Rule

12(c) as to the claims raised in Counts I and V and summary judgment under Rule 56 for those

asserted in Counts II, III, and IV of the Second Amended Complaint.

## II.    STATEMENT OF MATERIAL FACTS

1.  Plaintiffs—through Richard Golden, Plaintiffs' husband and father respectively,
    and through Scott J. Van Rixel—communicated directly with Defendant Mentor
    Capital, including Chester Billingsley, the CEO of Mentor Capital, during March
    2014 concerning their purchase of the shares at issue in this action.  (Second
    Amended Complaint, ¶¶ 9, 18; Declaration of Scott Van Rixel dated September 23,
    2015, attached hereto as Exhibit "A".)

2.  Plaintiffs dealt through Richard Golden—Plaintiffs' husband and father,
    respectively—in communicating with Mentor Capital and Scott J. Van Rixel during
    March 2014 concerning their purchase of the Mentor Capital stock.  (Second

Amended Complaint, ¶ 9; Declaration of Scott Van Rixel dated September 23, 2015, attached hereto as Exhibit "A".)

3. Neither Plaintiffs, nor anyone acting on their behalf, including Richard Golden and Scott Van Rixel, communicated with the Labertew Defendants concerning their purchase of the Mentor Capital stock in March 2014.  (Declaration of Michael L. Labertew attached hereto as Exhibit "B".)

4. Plaintiffs acquired their shares in Mentor Capital through Scott J. Van Rixel. (Declaration of Scott Van Rixel dated September 23, 2015, attached hereto as Exhibit "A".)

5. On March 13, 2014, Richard Golden determined to buy the Mentor Capital shares at issue here for the benefit of the Plaintiffs and informed Mr. Van Rixel of this determination.  (Declaration of Scott Van Rixel dated September 23, 2015, ¶ 9, attached hereto as Exhibit "A".)

6. On March 20, 2014, Plaintiffs purchased stock in Mentor Capital and delivered checks for the same to Scott Van Rixel.  (Second Amended Complaint, ¶ 16; Checks attached as Exhibit "F" to Plaintiffs' Opposition to Mentor's Motion for Reconsideration.)

7. During March 2014, Michael Labertew prepared the BOL with input from and communications with Chester Billingsley, the CEO of Mentor Capital.  (Declaration of Michael L. Labertew attached hereto as Exhibit "B".)

8. The BOL was issued for the benefit of certain specific entities and individuals that are referenced in the BOL, and only those entities and individuals were—according

to the plain language of the BOL—entitled to rely upon the BOL.  (Declaration of

Michael L. Labertew attached hereto as Exhibit "B".)

9.  Plaintiffs and others acting on their behalf, including—but not limited to—Richard

Golden, were not among the class of individuals or entities entitled to rely upon the

BOL.  (Declaration of Michael L. Labertew attached hereto as Exhibit "B".)

10. The Labertew Defendants did not disclose the BOL to Plaintiffs or to anyone acting

on their behalf, including—but not limited to—Richard Golden and Scott Van Rixel

at any time.  (Declaration of Michael L. Labertew attached hereto as Exhibit "B".)

11. The Labertew Defendants provided the BOL to Mentor Capital on March 13, 2014

and did not disclose, communicate or reveal the BOL to any other individual or

entity.  (Declaration of Michael L. Labertew attached hereto as Exhibit "B".)

12. On March 23, 2014, Chester Billingsley provided the BOL—for the first time—to

Mentor Capital's webmaster for posting on the company's website.  (Declaration of

Chester Billingsley attached hereto as Exhibit "C"; Email from Chester Billingsley

to Brendan Ryan dated March 23, 2014, ¶ 7, attached hereto as Exhibit "D".)

13. Brendan Ryan posted the BOL on Mentor Capital's website for the first time on

March 23, 2014. (Declaration of Brendan Ryan attached hereto as Exhibit "E".)

14. Prior to posting the BOL on its website on March 23, 2014 Mentor Capital did not

disclose, communicate, or deliver the BOL to Plaintiffs, Richard Golden, Scott Van

Rixel, or to the public.  (Declaration of Chester Billingsley attached hereto as

Exhibit "C"; Declaration of Brendan Ryan attached hereto as Exhibit "E".)

15. The only statements or communications of the Labertew Defendants at issue in this case are those contained in the BOL.  (Second Amended Complaint, ¶¶ 10-12, 29, 34, 39, and 57.)

### III.   LEGAL STANDARDS

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000). Dismissal is appropriate "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." Id.; citing Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 529 (10th Cir. 1992); see also Myers v. Koopman, 738 F. 3d 1190, 1193 (10th Cir. 2013), cert. denied, 134 S. Ct. 2842 (2014), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The court should "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party." Atlantic Richfield Co., supra, 226 F.3d at 1160, citing Realmonte v. Reeves, 169 F.3d 1280, 1283 (10th Cir. 1999). Judgment on the pleadings should be granted when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters., Inc. v. Am. Cas. Co., 442 F.3d 1239, 1244 (10th Cir. 2006), citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Schaffer v. Salt Lake City Corp., 814 F.3d 1151, 1155 (10th Cir. 2016). "When applying

6

this standard, [the court should] view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Ribeau v. Katt, 681 F.3d 1190, 1194 (10th Cir. 2012) (quotations omitted).

"For dispositive issues on which the plaintiff will bear the burden of proof at trial, he must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to his case in order to survive summary judgment." Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007) (brackets and internal quotation marks omitted). The evidence "must be based on more than mere speculation, conjecture, or surmise." Id. (internal quotation marks omitted). In other words, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." Id. (internal quotation marks omitted).

Applying these well-recognized standards to the allegations in the Second Amended Complaint and the material facts existing in this instance requires that the Court grant the following relief in favor of the Labertew Defendants:

a.  Dismissal pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as to the claims asserted in Counts I and V; and,

b.  Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted in Counts II, III, and IV.

## IV.   ARGUMENT

A.  The Labertew Defendants are entitled to dismissal of Plaintiffs' claims for violation of Section 12 of the 1933 Securities Act.

Plaintiffs are not able to prove, and have not alleged, that the Labertew Defendants violated Section 12 of the Securities Act of 1933.  As such, these Defendants are entitled to

judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to Count I of the Second Amended Complaint.

The Securities Act of 1933, 15 U.S.C. §77a et seq., ensures that those selling securities to the public disclose material information.  Section 12 of the Securities Act of 1933 allows a private right of action against "[a]ny person who…offers or sells a security" in violation of the substantive provisions of the Securities Act of 1933 and continues that they, "shall be liable…to the person purchasing such security from him." 15 U.S.C. §77l. This cause of action is not solely limited to sales by issuers, but does require privity between the parties.

There is no dispute here that the Labertew Defendants did not sell securities to anyone, including the Plaintiffs.  Indeed, the Second Amended Complaint makes no allegation that the Labertew Defendants ever offered or sold securities.  Similarly, the Plaintiffs do not allege that they purchased securities from the Labertew Defendants.   Because the Plaintiffs have not even alleged, and are much less able to prove a "set of facts in support of the claims that would entitle [them] to relief" against the Labertew Defendants under Section 12 of the 1933 Act in Count I of the Second Amended Complaint, these Defendants are entitled to judgment on the pleadings. Myers v. Koopman, 738 F. 3d 1190, 1193 (10th Cir. 2013).

> B.  The Labertew Defendants are entitled to summary judgment on the Plaintiffs' claims for violation of the Securities Act of 1934 and Rule 10b-5, for fraud, and for negligent misrepresentation.

Section 10(b) of the 1934 Securities Act prohibits the use of manipulative or deceptive devices in violation of SEC rules and applies to all sales of securities. Rule 10b-5 makes it unlawful to, "omit to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. §240.10b-5(b). To prevail on the Rule 10b-5 claim contained in Count II, Plaintiffs must prove that the Labertew

Defendants (i) made a false statement or omission of material fact, (ii) with scienter, (iii) in connection with the purchase or sale of a security, (iv) **upon which the plaintiff justifiably relied**, and (v) which proximately caused the plaintiff's loss. <u>Dura Pharm. Inc. v. Broudo</u>, 544 U.S. 336 (2005).

Similarly, in order to recover for fraud as alleged in Count III, Plaintiffs must prove that: 1.  The defendant made a false or misleading statement; 2. The defendant knew the statement was false or recklessly disregarded its truth or falsity; 3.  The defendant intended for the plaintiff to rely upon the statement; 4.  The plaintiff justifiably relied on the defendant's false or misleading statement; and, 5.  The plaintiff suffered damages as a result of relying on the statement.  <u>Armed Forces Insurance Exchange v. Harrison</u>, 70 P.3d 35 (Utah 2003); <u>Cardon v. Jean Brown Research</u>, 2014 UT App 35, 327 P.3d 22.  Plaintiffs must also show that they relied upon a false statement of the Labertew Defendants, and that this reliance was reasonable, in order to prevail on their negligent misrepresentation claim in Count IV.  <u>Smith v. Frandsen</u>, 94 P.3rd 919, 922 (Utah 2004); <u>West v. Inter-Financial, Inc.</u>, 139 P.3d 1059, 1063 (Utah Ct. App. 2006).

There is no issue of material fact here as to whether Plaintiffs justifiably relied on any statement or omission of the Labertew Defendants in their purchase of Mentor shares.  The material facts existing here establish that:

      a.   Plaintiffs and others acting on their behalf, including—but not limited to—Richard Golden, were not among the class of individuals or entities entitled to rely upon the BOL.

      b.   The Labertew Defendants did not disclose the BOL to Plaintiffs or to anyone acting on their behalf.

      c.   The Labertew Defendants provided the BOL to Mentor Capital on March 13, 2014.

    d.   On March 23, 2014, Chester Billingsley provided the BOL—for the first time—to Mentor Capital's webmaster for posting on the company's website.

    e.   Brendan Ryan posted the BOL on Mentor Capital's website for the first time on March 23, 2014.

    f.   Prior to posting the BOL on its website on March 23, 2014 Mentor Capital did not disclose, communicate, or deliver the BOL to Plaintiffs, Richard Golden, Scott Van Rixel, or to the public.

    g.   Plaintiffs acquired their shares in Mentor Capital through Scott J. Van Rixel.

    h.   On March 13, 2014, Richard Golden determined to buy the Mentor Capital shares at issue here for the benefit of the Plaintiffs and informed Mr. Van Rixel of this determination.

    i.   On March 20, 2014, Plaintiffs purchased stock in Mentor Capital and delivered checks for the same to Scott Van Rixel.

While Plaintiffs allege reliance on the BOL [SAC, ¶¶ 34, 35, 39, 40, 45, 46], the material facts show that not only was there no such reliance, but that there could not have been.  After all, the BOL was not posted on Mentor Capital's website or otherwise revealed to the Plaintiffs or the public until March 23, 2014—ten (10) days **after** Richard Golden determined to acquire the shares for Plaintiffs and three (3) days **after** Plaintiffs purchased the shares and provided checks to Scott Van Rixel.

Justifiable reliance is a dispositive element "on which the plaintiff[s] will bear the burden of proof at trial." Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007).  They "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of [this] element . . . in order to survive summary judgment." Id.  Moreover, their evidence "must be based on more than mere speculation, conjecture, or surmise." Id.  Since there is no evidence showing that the Labertew Defendants intended the Plaintiffs to rely on the BOL or that Plaintiffs: a. were entitled to rely upon the BOL; b. reasonably relied upon the BOL; or c.

justifiably relied upon the BOL—and could not have relied on a document that was not provided to them and was not posted on Mentor Capital's website until **<u>after</u>** they made the decision to and did purchase the shares—Plaintiffs will be unable to establish an essential element of the claims contained in Counts II, III, and IV of the Second Amended Complaint.  Accordingly, the Labertew Defendants are entitled to summary judgment pursuant to Rule 56 for each of these Counts.

        <u>C.</u>  <u>The Labertew Defendants are entitled to dismissal of the Plaintiffs' conspiracy claim</u>.

 In Utah, "[a] claim for civil conspiracy must allege the following elements: '(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." <u>Peterson v. Delta Air Lines, Inc.</u>, 2002 UT App 56, ¶ 12, 42 P.3d 1253 (quoting <u>Alta Indus. v. Hurst</u>, 846 P.2d 1282, 1290 n. 7 (Utah 1993)).  Moreover, "[t]he claim of civil conspiracy `require[s], as one of [its] essential elements, an underlying tort.'" <u>Puttuck v. Gendron</u>, 2008 UT App 362, ¶ 21, 199 P.3d 971 (alteration in original) (quoting <u>Coroles v. Sabey</u>, 2003 UT App 339, ¶ 36, 79 P.3d 974).

     "Where plaintiffs have `not adequately pleaded *any* of the basic torts they allege ... dismissal of their civil conspiracy claim' is appropriate." *Id.* (omission in original) (quoting <u>Coroles</u>,2003 UT App 339, ¶ 38, 79 P.3d 974); *see also* 16 Am.Jur.2d *Conspiracy* § 50 (2009) ("[I]f the acts alleged to constitute the underlying wrong provide no cause of action, then neither is there a cause of action for the conspiracy itself.").  Here, Plaintiffs "underlying wrongs" or "basic torts"—the securities law violations, common law fraud, and negligent misrepresentation are all subject to summary adjudication as noted above.  And, after dismissal and/or summary judgment, Plaintiffs will not be able to establish this essential element of their

conspiracy claim in Count V, and Defendants are entitled to judgment on the pleadings.  See, Myers v. Koopman, 738 F. 3d 1190, 1193 (10th Cir. 2013).

## V.   CONCLUSION

For all the foregoing, the Labertew Defendants are entitled to summary adjudication under Rule 12(c) as to the claims raised in Counts I and V and summary judgment under Rule 56 for those asserted in Counts II, III, and IV of the Second Amended Complaint.  Under the facts existing here, Plaintiffs have not stated actionable claims as to these Defendants under Counts I and V, and Defendants are entitled to judgment as a matter of law as to the claims asserted in Counts II, III, and IV of the Second Amended Complaint.

RESPECTFULLY SUBMITTED this 15th day of December 2017.

LABERTEW & ASSOCIATES

/s/ Michael L. Labertew
_____
Michael L. Labertew
Attorney for Labertew & Associates, LLC
and *pro se* for Michael L. Labertew

**CERTIFICATE OF MAILING**

I HEREBY CERTIFY that a true and correct copy of the foregoing document was delivered via the Court's electronic filing system to the following:

Sean N. Eagan
Parkside Tower – Suite 950
215 South State Street
Salt Lake City, UT 84111
seannegan@sneganlaw.com

Paul D. Marotta
Megan Jeanne
The Corporate Law Group
1342 Rollins Road
Burlingame, CA 94010
paul@tclg.com
megan@tclg.com

Trent J. Waddoups
Carr & Waddoups
8 East Broadway, Suite 609
Salt Lake City, UT 84111
trent@cw-law.net

DATED this  15th day of December, 2017.


 /s/ Michael L. Labertew
MICHAEL L. LABERTEW

**Sean N. Egan (# 7191)**
seannegan@sneganlaw.com
Parkside Tower – Suite 950
215 South State Street
Salt Lake City, Utah 84111-2374
Telephone: (801) 363-5181
Facsimile: (801) 363-5184
*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF UTAH

| | |
|---|---|
| GENA GOLDEN, an individual and SUSAN GOLDEN, an individual, | ) ) ) **DECLARATION OF** |
| Plaintiffs, | ) **SCOTT VAN RIXEL** ) ) |
| vs. | ) ) ) |
| MENTOR CAPITAL, INC., a Delaware corporation, LABERTEW & ASSOCIATES, a Utah limited liability company, and Michael L. Labertew, an individual | ) Civil No. 2:15-CV-00176-TC ) ) Honorable Jill N. Parrish ) ) |
| Defendants. | ) **(Jury Trial Demanded)** ) ) ) |

I, SCOTT VAN RIXEL, declare:

1.       I an over the age of 21. I have personal knowledge of the facts set forth in this

declaration

2.       I am the CEO of Bhang Chocolate Company ("Bhang"). In early 2014, Bhang

entered into a transaction with Mentor Capital, Inc. Incidental to that transaction, Mentor,

through its CEO Chester Billingsley, alerted me to the opportunity to purchase Mentor common stock.

3.     I expressed an interest in doing that but I wanted more information.  On March 9, 2014, Billingsley sent me an email telling me that I needed to move quickly to purchase shares. A copy of that email is attached hereto as Exhibit A.

4.     The next day, March 10, 2014, Billingsley sent me and others an email answering certain questions we had about the stock Mentor was offering to sell us.  A copy of this email is attached hereto as Exhibit B.  In this email, Billingsley represented that the stock would be freely tradable.

5.     During this same time frame, I had several telephone discussions with Billingsley about a variety of matters.  With respect to the Mentor shares, I told him that others were going to want to purchase the Mentor shares or, alternatively, that I would gift those shares to certain people.  One of the people I mentioned who might purchase shares was Richard Golden.  I subsequently did purchase and gift Mentor shares to another person.

6.     Billingsley told me that I should be going out to get as many investors as possible. He said that anyone can purchase but that time was limited before he would have to withdraw the offer at the advantageous price.

7.     I also told Billingsley that because of the time deadline he established in his March 9 email, I was going to front money for the purchase of shares for any of the people I mentioned including Richard Golden.  Billingsley told me to collect the funds and just send it all

2

Decl - Van Rixel

in and he would sort out who got the shares later. I would keep whatever shares were not purchased by others. In this way I ensured that shares would be bought at the advantageous price Mentor was offering but that Mentor would know that others had actually purchased them.

8.   I shared the emails provided to me by Billingsley including the March 10 email, Exhibit B, with Richard Golden when he told me he was interested in purchasing shares.

9.   On or about March 13, 2014, Richard told me that he wanted to buy shares for the benefit of his wife and daughter. We reached an agreement whereby Richard would pay me back the money I had advanced to Mentor on his behalf.

10.  Around that same time, I told Mentor that Richard was purchasing shares for his wife and daughter and gave them the information concerning where to send the shares and other correspondence from the company.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this ___ day of September, 2015.

By _____
SCOTT VAN RIXEL

3

Decl - Van Rixel

**Exhibit C**

PAUL DAVID MAROTTA (CA State Bar No. 111812)
MEGAN JEANNE (CA State Bar No. 251294)
THE CORPORATE LAW GROUP
1342 ROLLINS ROAD
BURLINGAME, CA 94010
Telephone:    (650) 227-8000
Facsimile:    (650) 227-8001
Email:        paul@tclg.com
              megan@tclg.com

TRENT J. WADDOUPS
CARR & WADDOUPS
ATTORNEYS AT LAW, LLC
8 EAST BROADWAY, SUITE 609
SALT LAKE CITY, UTAH  84111
Telephone:    (801) 363-0888
Facsimile:    (801) 363-8512
Email:        trent@cw-law.net

Attorneys for Defendant
MENTOR CAPITAL, INC., a Delaware corporation

---

## UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF UTAH

| | |
|---|---|
| GENA GOLDEN, an individual and SUSAN GOLDEN, an individual, Plaintiffs, <br> v. <br><br> MENTOR CAPITAL, INC., a Delaware corporation, LABERTEW & ASSOCIATES, a Utah limited liability company, and MICHAEL L. LABERTEW, an individual, Defendants. | CIVIL ACTION NO. 2:15-CV-00176-JNP-BCW <br><br> Honorable Jill N. Parrish <br> Magistrate Brooke C. Wells <br><br> DECLARATION OF CHET BILLINGSLEY IN SUPPORT OF MENTOR CAPITAL, INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION |
| MENTOR CAPITAL, INC., a Delaware corporation, Third-Party Plaintiff, <br> v. <br><br> RICHARD GOLDEN, an individual, and SCOTT VAN RIXEL, an individual, Third-Party Defendants. | |

- 1 -
**DECLARATION OF CHET BILLINGSLEY ISO MENTOR CAPITAL INC.'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION**

I, Chet Billingsley, declare as follows:

1.     I am the President, Chief Executive Officer, and Chairman of Defendant Mentor Capital, Inc. ("Mentor").

2.     The matters stated herein are known to me personally, and if called and sworn as a witness I could competently testify thereto.

**The August 6, 2014 Email Message**

3.     In their Reply briefing on their motion for Partial Summary Adjudication, Plaintiffs attached, with no context, verification, or testimony from me, an email dated August 6, 2014 which I sent to Adam Golden, the son and brother, respectively, of Plaintiffs Susan Golden, and Gena Golden, and attorney Todd DiTommaso, to assist Mr. DiTommaso in writing an opinion letter so that the Plaintiffs could deposit their Mentor stock with a brokerage.

4.     A true and correct copy of this entire email message is attached hereto as Exhibit A.

5.     When I sent this email message I included, within the body of the email, copies of Van Rixel's emails committing to purchase securities and asking if he could have his purchased shares issued in other persons' names.

6.     At the bottom of the email I say that, "3 email copies on election to exercise follow directly below." These 3 email copies were omitted by Plaintiffs. This single email is bates stamped Mentor 126-135.

7.     To be clear, this email was authored by me more than four months after we received the check from Scott Van Rixel buying the stock, and less than two weeks after learning that the Goldens had paid Van Rixel for their stock.

8.     I was trying to help the Goldens get their Mentor stock deposited into a brokerage account. None of our other shareholders had had as difficult a time obtaining a broker. I sent this August 6 email to assist that process as I was trying to help the Goldens. The Goldens are here trying to use my good deed against me and Mentor.

**DECLARATION OF CHET BILLINGSLEY ISO MENTOR CAPITAL INC.'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION**

9.      In my email message I was commenting on (confirming, etc.) questions posed to me by Mr. DiTommaso.

10.     For example I confirmed in the second paragraph that the statement Mr. DiTommaso makes in the first paragraph that the shares held by the Goldens were obtained on exercise of warrants issued in connection with the Mentor bankruptcy proceedings.  This is true.

11.     I also confirmed that, "issuance of the warrant was exempt from registration pursuant to 11. U.S.C. 1145(a) and exercise of the warrant resulted in freely trading stock pursuant to 11 U.S.C. 1145(a)(2)."  I am not a lawyer but I understand this to be true.

12.     I confirm in the third paragraph that, "the election to exercise the warrant was completed on March 10, 2014 by Scott Van Rixel."  This is true.

13.     I also confirm that, "On that day or the next day he asked if he could designate others to receive his shared [sic]."  This is also true.

14.     Note that I did not say, "resell," and I used the phrase, "his [Van Rixel]'s shares," because I had no idea, when he asked in March, 2014, that Mr. Van Rixel was reselling shares to the Goldens.

15.     I first learned that Mr. Van Rixel had sold his stock to the Goldens on July 25, 2014, and saw the Goldens checks to Van Rixel on July 29, 2014, both only a few days before preparing this August 6 email message to Mr. DiTommaso.[1]

16.     Apparently at the time the Goldens supposedly bought stock from Mentor they did not even have the funds to pay for such stock.  This makes it look even more like a resale.  You can't buy securities that you can't pay for.  Van Rixel's check was apparently more than an, 'administrative convenience.'

17.     I continued in the August 6, 2014 email confirming that, "Soon thereafter he [Van

---

[1] On July 24, 2014 I asked the Goldens in an email, "Why are you receiving shares from the Van Rixel Family Trust?" The Goldens responded that, "[D]ue to short term cash liquidity on our part, and we subsequently re-paid him for the same."

**DECLARATION OF CHET BILLINGSLEY ISO MENTOR CAPITAL INC.'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION**

Rixel] supplied the names of Susan and Gena Golden." This is true. Mr. Van Rixel supplied the names on March 23, 2014 and we issued certificates to Susan Golden and Gena Golden.

18.     On March 25, 2014 we mailed the Goldens' stock certificates to Mr. Van Rixel.

19.     We did not know the address for the Goldens until April 17, 2014 when it was provided to us by Mr. Van Rixel.

20.     On April 8th in an email I wrote to Mr. Van Rixel I asked for contact info for the people he was gifting shares to:  I said "By the way, if these (3) folks are going to be shareholders, we'll eventually need address, email, & phone so that they get all notices they have the right to."

21.     I continued in the email confirming that, "We said Yes [to issuing stock to 'others'] and issued separate warrant certificates to each person." This is also true.

22.     The email then continues where I say that, "For administrative convenience Scott issued a single check to pay for all shares and then he received checks from the Goldens to reimburse him at cost a few days later." This is what was represented to me by the Goldens and Van Rixel. I do not know this to be true and could not say so since I was not involved in their dealings prior to telling Scott that he could gift some stock to unknown, 'others.'

23.     This is no sort of admission of anything by me. As is undisputed, I had no idea that Van Rixel was selling stock to the Goldens until late July when I saw copies of the checks the Goldens gave Van Rixel. And this was only a few days before I wrote this email message in an attempt to help the Goldens.

24.     For them to try to spin this email as me confirming what they told me is cynical and untrue. I could not confirm what they told me they did between themselves.

25.     In fact in the next (fourth) paragraph of the email I am posing some thoughts and questions about what exemptions might apply to a resale (since I had just learned that is what happened here).

26.     I say that, "my investigation indicates that MNTR staff and Warrant Transfer Agent treated it as an original purchase, not resale right from the outset." This is true since when Van

**DECLARATION OF CHET BILLINGSLEY ISO MENTOR CAPITAL INC.'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION**

Rixel asked if he could use the stock as, "Thank Yous," we accommodated him and issued the stock directly to those we thought were his giftees (the Goldens).

27.     Nowhere in this email do I admit or agree that there was any privity between Susan Golden and Mentor, Gena Golden and Mentor, or even Richard Golden and Mentor.

28.     It was generally our practice to issue certificates directly to those identified to us as giftees, and that is what we did with respect to the Goldens.

29.     Had we known that this was a resale we would have treated the transaction differently right from the start.  But the nature of the transaction was misrepresented to us for over four months.

30.     As is clear from the other evidence presented, none of those people and Mentor communicated in any way prior to the stock being sold to Van Rixel.

31.     The Goldens were unnamed and unknown to Mentor when Van Rixel, a member of Bhang's management, who received Mentor's "turnaround" money, and who Mentor had an obligation to put on its Board of Directors, exercised long outstanding Mentor warrants.

32.     The only evidence is that Richard Golden read the agreement that Mentor and Bhang were about to sign; supposedly (and incorrectly) assumed that, "Bhang management,"[2] included him and, when Scott Van Rixel offered him some stock, accepted that from Van Rixel and paid Van Rixel.

33.     And that doesn't even include the problem that the stock was actually purchased by Gena Golden and Susan Golden, clearly not, "Bhang management," either.

34.     None of this and nothing in my August 6, 2014 email message creates any sort of relationship between the Goldens and Mentor.

**Fraud by Van Rixel**

35.     On top of this, there is a perverse reason why Van Rixel hid from us that the

---

[2] Paragraph B of Addendum I also refers to Bhang principals interchangeably with Bhang management.  Golden was neither.

**DECLARATION OF CHET BILLINGSLEY ISO MENTOR CAPITAL INC.'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION**

Goldens were paying him.

36.     I had told Van Rixel that everything paid to us by him, Richard Sellers and William Waggoner (the real, "Bhang management") would be re-invested in Bhang.

37.     The Bhang Agreement required that, "Funds delivered by Bhang principals will be paid out to Bhang" (Page 8, Line 17).  All funds paid in for the purchase of the Mentor stock were immediately paid out to Bhang, indicating all came from principals and none came from the Goldens, which funds would have been retained by Mentor.

38.     When we received Van Rixel's check we turned around and sent that money right back to Bhang as part of Mentor's investment in Bhang.

39.     Had we known that Van Rixel was reselling stock to others, unrelated to Bhang management, we never would have invested those funds back in Bhang.

40.     So had Van Rixel said in words or substance, "I'm reselling a bunch of this stock to other people," or, "We're aggregating money from non-Bhang persons," we never would have sent that money to Bhang.

41.     In not telling us that he was reselling the stock, Mr. Van Rixel was, in effect, defrauding Mentor.

42.     After the fraudulent representation of a gift, the resulting standard processing, coincidentally as if in an original sale, does not make it so, and does not change the fact that this was a purchase under contract to a party of the contract followed by a resale to a non-party.

43.     The nature of the paperwork under a fraudulent representation does not in itself establish a contract, nor privity.  This is especially true when the parties of one side are unknown, the parties are never contacted, no money is received by Mentor, an offer to business partners, "Bhang management," is hijacked, and for over four months the exchange of money by Van Rixel and the Goldens was kept secret.

44.     Mentor wanted the Bhang principals (Van Rixel, Sellers, and Waggoner) to have some skin in the game with Mentor, because they were business partners, because Mentor had an

obligation to put Van Rixel on its Board of Directors, and because we were offering to Bhang management to exercise warrants at a 50% discount to market.

45.     Richard Golden may try to claim to have acted as Bhang's lawyer in connection with the agreement between Mentor and Bhang, and claim that this somehow makes him, "Bhang management," but Van Rixel already testified under oath that Golden did not represent Bhang in connection with the agreement with Mentor.  [See Declaration of Megan Jeanne, ¶¶5-8, 10-13].

46.     Even if Richard Golden did do legal work for Bhang, that doesn't make him Bhang management.   And it certainly doesn't make Susan Golden or Gena Golden, "Bhang management."

47.     And as is clear from Richard Golden's testimony [See, eg. Marotta Declaration] he never reached out to Mentor or I (as he was supposedly reading the agreement between Mentor and Bhang) though he could have at any time.

48.     In the Bhang agreement the Bhang principals Scott Van Rixel and Richard Sellers were required to, and did, "inform MNTR of their commitment and anticipated funding" for 100% of the shares purchased (page 8, line 15).  Susan and Gena Golden made no such commitment and were unknown to Mentor.

49.     In Scott Van Rixel's commitment to purchase email [March 10, 2014 email from Scott Van Rixel; See page two of Exhibit A] he writes, "I, Scott J. Van Rixel agree to purchase … 105,000 shares at $1.95" not "we" or "on behalf of myself and others, etc."

50.     In the arbitration between Mentor and Bhang (in which Mentor prevailed) the arbitration panel and court ruled that the, "Van Rixel Family Trust paid $204,750 …for the purchase of 105,000 … shares of Mentor common stock," (Page 2, Line 20) and that, "the Van Rixel Family Trust shall return the 105,000 shares." (Page 3, Line 5).

51.     Since Mentor did not know that the Goldens had purchased their stock from Van Rixel for several months, it may have led brokerages investigating the stock's issuance to conclude that there was something fishy about the stock's origins, as Mentor did not know they had bought

**DECLARATION OF CHET BILLINGSLEY ISO MENTOR CAPITAL INC.'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION**

it.  This may very well have been the reason the Goldens could not get their stock deposited in 2014.

52.     Had Van Rixel and the Goldens been honest from the beginning about the resale, Mentor may have been able to help get their stock deposited and avoided all of this.  There is nothing intrinsically wrong with a resale.  Free trading shares held and resold by non-affiliates, are free trading.

I declare under penalty of perjury under the laws of the State of Utah and the laws of the United States of America that the foregoing is true and correct and that this Declaration was signed by the undersigned on October 23, 2017 at Ramona, California.


/s/ Chet Billingsley
Chet Billingsley

**DECLARATION OF CHET BILLINGSLEY ISO MENTOR CAPITAL INC.'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY ADJUDICATION**

**EXHIBIT A**

## Chet Billingsley

| | |
|---|---|
| **From:** | Chet Billingsley |
| **Sent:** | Wednesday, August 06, 2014 4:59 PM |
| **To:** | Adam F. Golden; Tod Anthony DiTommaso, Esq. |
| **Cc:** | Richard A. Golden |
| **Subject:** | RE: MNTR Stock - Susan & Gena Golden - Opinion Letter |

**Tod  -- Information on the Susan and Gena Golden MNTR share certificates follow within the text of your copied email below:**

I have reviewed the information you have provided.  It is my understanding that the shares were acquired when Susan and Gina exercised a warrant received in connection with the 1998 bankruptcy proceedings of Mentor Capital, Inc.  As such, issuance of the warrant was exempt from registration pursuant to 11 U.S.C. 1145(a) and exercise of the warrant resulted in freely trading stock pursuant to 11 USC 1145(a)(2).

Please confirm that the above fact is true **[ Confirmed ]** and provide me with the date that the warrant was obtained **[ March 26, 2014 & Simultaneously Exercised]**. I will then prepare a shareholder declaration affirming the above fact as well as their non-affiliate status **[The are not and have not been affiliates].**.

It would be helpful if you can forward a copy of the warrant certificate,**[ Gena Golden WB-1684 for 18,687 shares + WD-2025 for 6,313 shares = 25,000shares ] / [ Susan Golden WB-1685 for 37,375 shares + WB-2026 for 12,625 shares = 50,000 shares ]  [ A copy of the 4 warrant certificates is being sent from the Warrant Transfer Agent  here and will be forwarded to Tod when it arrives and is verified by MNTR ]** warrant agreement **[ The "Warrant Agreement" is the Court Order as manifest in the 130 page  Plan of Reorganization & Disclosure Statement found at the company web site under Investors Corner  >>> Disclosures  >>>  Bottom most entry.  It is better summarized in the Blanket Opinion Letter found at the top of that same page.  ]**  , and/or any election to exercise the warrant.  **[ The election to exercise the warrant was completed on March 10, 2014 by Scott Van Rixel.  On that day or the next day he asked if he could designate others to receive his shared. Soon thereafter he supplied the names of Susan and Gena Golden.   We said Yes and issued separate warrant certificates to each person.  For administrative convenience Scott issued a single check to pay for all shares and then he received checks from the Goldens to reimburse him at cost a few days later.  We have received copies of all such checks  --- Pertinent email copies follow.  ]**

**Note: Because the shares are freely trading and were immediately transferred at cost, I guess a different but similar 1145 exemption could apply as to a secondary resale of stock from Scott to the Goldens.  However, my investigation indicates that MNTR staff and the Warrant Transfer Agent treated it as an original purchase, not a resale, right from the onset.**

**We will forward a copy of the 4 separate warrants when they arrive.**

**3 email copies on election to exercise follow directly below.**

**stock commitment**

Scott Van Rixel [scott@bhangchocolate.com]

You replied on 3/10/2014 9:00 PM.

Sent: Mon 3/10/2014 8:16 PM

To: Chet Billingsley

I Scott J. Van Rixel  hereby agree to purchase MNTR freely trading unrestricted shares.   Stock  purchase commitment...    105,000 shares at  $1.95

please provide wire info or mailing address for check  and the date that needs to be on check

Thank You

Scott Van Rixel
 Bhang Chocolate Company
"Perfection in Cannabis Confection"
scott@bhangchocolate.com

Mentor - 000127

## stock purchase

Scott Van Rixel [scott@bhangchocolate.com]

You replied on 3/11/2014 9:20 PM.

Sent:   Tue 3/11/2014 8:53 PM
To:     Chet Billingsley

I wanted to know if I was able to put the shares I committed to in different peoples names as I would like to use them as thank you's for peoples efforts in helping us make the decision to move forward with you.

Am I able to have them registered in their name right away or if I need to receive them and them have them transferred after the fact?  I have not nor have any intention of selling these shares at any profit.  These individuals would most likely want to keep them for the long hall, as they were people who believe in me, you and what we are going to be doing together.

Thank you for letting me know

Scott J. Van Rixel
Bhang Chocolate Company Inc.
scott@bhangchocolate.com

Mentor - 000128

## stock #'s

**Scott Van Rixel** [scott@bhangchocolate.com]

Sent: Sun 3/23/2014 1:25 PM

To: Chet Billingsley

Hi Chester,

I hope you are having a good sunday.. it is hot as hell (and humid) here today. Here is the breakdown of the shares please.

**GENA GOLDEN,** as to 25,000 shares

**SUSAN K GOLDEN, REV TRUST, u/a/d 11 MAY 1999,** as to 50,000 shares

**Scott J. Van Rixel,** as to 25,000 shares

**Jeremy Joseph,** as to 5,0000 shares

Thank you very much and they can be sent to the 6815 address to my attention. Thanks

Scott J. Van Rixel
Bhang Chocolate Company Inc.
scott@bhangchocolate.com

Tod -- Best to you in all things,

**_Chet Billingsley_**, Chairman & CEO

Δ **M E N T O R  C A P I T A L , i n c.** (_MNTR_)

Post Office Box 1709 Δ Ramona, CA 92065

Dir: (760) 788 - 4700 Δ Fax: (760) 788 - 2525

_____

Email: Chet@MentorCapital.com        Website: www.MentorCapital.com

*Disclaimer and Forward Looking Statements*
*SAFE HARBOR STATEMENT: Certain statements contained in this email, attachments and associated discussions, including statements regarding events and financial trends that may affect Mentor Capital, Inc.'s future operating results, financial position, stock price and cash flows, may constitute forward-looking statements within the meaning of the federal securities laws. These statements are based on our assumptions and estimates and are subject to risks and uncertainties. You can identify these forward-looking statements by the use of words like "strategy," "expects," "plans," "believes," "will," "would," "estimates," "intends," "feels," "projects," "goals," "targets," "hopes," "seeks" and other words of similar meaning. Pro forma projections of an individual or generic investor's investment performance always are completely uncertain. Similarly, pro forma discussions of share or warrant prices, separated warrant and share pricing upon a reverse split, movement to other exchanges, for example in order to explain the sequence and timing of share trading and possible warrant exercise sequences, are always completely uncertain. You can also identify these and other forward statements by the fact that they do not relate strictly to historical or current facts. For these statements, we claim the protection of the safe harbor for forward-looking statements provided by the Private Securities Litigation Reform Act of 1995. Always consult a financial professional before making any investment into Mentor Capital, Inc. or similar smaller public companies.*

**From:** Adam F. Golden [mailto:afg@kgpalaw.com]
**Sent:** Wednesday, August 06, 2014 7:36 AM
**To:** Tod Anthony DiTommaso, Esq.; Chet Billingsley
**Cc:** Richard A. Golden
**Subject:** RE: MNTR Stock - Susan & Gena Golden - Opinion Letter
**Importance:** High

Mr. DiTommaso,

First of all, thanks for your prompt attention and response; I am very grateful.  Second, I copied Mr. Chet Billingsley on this e-mail, as he is in a better position to answer your query.

Chet – can you please provide Mr. DiTommaso any information regarding the warrant exercise, pursuant to his request directly below.  Thanks in advance for your prompt attention.  Please reply all in your response so that both Mr. DiTomasso and myself receive the reply.

Kindest regards,
*Adam F. Golden, Esq.*
**Attorney at Law**

 Kramer & Golden, P.A. • Law Offices

1175 N.E. 125th Street, Suite 512
North Miami, Florida 33161
P: (305) 899-1800
F: (305) 891-1144
E: afg@kgpalaw.com
www.kgpalaw.com

**CONFIDENTIALITY NOTE:** The information contained in this transmission may be priviliged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immeditatley reply to the sender that you have received this communication in error then delete it.

**CIRCULAR 230 NOTICE:** To comply with U.S. Treasury Department and IRS regulations, we are required to advise you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this transmittal, is not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code, or (ii) promoting, marketing or recomnneding to another party any transaction or matter addressed in this e-mail or attachment.

**From:** Tod Anthony DiTommaso, Esq. [mailto:todanthonyditommaso@earthlink.net]
**Sent:** Tuesday, August 05, 2014 6:02 PM
**To:** Adam F. Golden
**Subject:** RE: MNTR Stock - Susan & Gena Golden - Opinion Letter

Mr. Golden,

I have reviewed the information you have provided.  It is my understanding that the shares were acquired when Susan and Gina exercised a warrant received in connection with the 1998 bankruptcy proceedings of Mentor Capital, Inc.  As such, issuance of the warrant was exempt from registration pursuant to 11 U.S.C. 1145(a) and exercise of the warrant resulted in freely trading stock pursuant to 11 USC 1145(a)(2).

Please confirm that the above fact is true and provide me with the date that the warrant was obtained. I will then prepare a shareholder declaration affirming the above fact as well as their non-affiliate status.

It would be helpful if you can forward a copy of the warrant certificate, warrant agreement, and/or any election to exercise the warrant.

Very Truly Yours,

Mentor - 000130

Tod A. DiTommaso

-----Original Message-----
From: "Adam F. Golden"
Sent: Aug 5, 2014 1:21 PM
To: "Tod Anthony DiTommaso, Esq."
Cc: "Richard A. Golden"
Subject: RE: MNTR Stock - Susan & Gena Golden - Opinion Letter

Tod,

The Mentor confirmation letters are in the PDF document I sent you earlier (at the very end, the last two pages).

Please see attached "blanket letter opinion" per your request.

Just FYI – this "blanket opinion letter" was apparently what many shareholders have used to deposit their stock (according to Mentor CEO, Chet Billingsley), and also what was initially accepted by Spencer Edwards as being satisfactory.  Please let us know if there is anything else you need.  Thanks.

Kindest regards,
*Adam F. Golden, Esq.*
**Attorney at Law**

1175 N.E. 125th Street, Suite 512
North Miami, Florida 33161
P: (305) 899-1800
F: (305) 891-1144
E: afg@kgpalaw.com
www.kgpalaw.com

**CONFIDENTIALITY NOTE:** The information contained in this transmission may be priviliged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipitent, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immeditatley reply to the sender that you have received this communication in error then delete it.

**CIRCULAR 230 NOTICE:** To comply with U.S. Treasury Department and IRS regulations, we are required to advise you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this transmittal, is not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code, or (ii) promoting, marketing or recommneding to another party any transaction or matter addressed in this e-mail or attachment.

**From:** Tod Anthony DiTommaso, Esq. [mailto:todanthonyditommaso@earthlink.net]
**Sent:** Tuesday, August 05, 2014 4:02 PM
**To:** Adam F. Golden
**Cc:** Richard A. Golden
**Subject:** RE: MNTR Stock - Susan & Gena Golden - Opinion Letter

Mr. Golden,

From what you sent, it is unclear what exemption Susan and Gena are claiming.  So I went back to the original e-mail exchange with Paul Marotta and see that there is a reference to "attached confirmations from Mentor Capital concerning the issuing of our shares. Notice these were issued directly by Mentor as conversion of warrants . . . ."  It is also mentioned that "as for the legality of trading in Mentor shares generally, it was represented to us by a broker at Spencer Edwards that the issuer 'blanket opinion' letter provided by Mentor was legally 'insufficient' to allow the shares to trade."

It appears that ownership of the shares are the result of a conversion of warrants.  Please provide background on the subject transaction with Mentor Capital.  It would be helpful if you can forward the mentioned "Mentor Capital confirmations" and the "blanket opinion" letter as well as any other related documentation supporting the conversion.

Very Truly Yours,

Mentor - 000131

Tod Anthony DiTommaso

-----Original Message-----
From: "Adam F. Golden"
Sent: Aug 5, 2014 9:19 AM
To: "Tod Anthony DiTommaso, Esq."
Cc: "Richard A. Golden"
Subject: RE: MNTR Stock - Susan & Gena Golden - Opinion Letter


Mr. DiTomasso,

Please see attached worksheet, copies of the certificates, and copies of payment for same (with verification on behalf of Mentor in receipt of payment). Please let me know if there is anything more you require. If you weren't aware, you will see that payment was initially made by Scott Van Rixel for the shares (as we did not have the funds liquid at the time payment needed to be rendered, and Scott offered to put up the money in that regard, after which we returned the money to Scott via check, which I included as well), but directly issued to Susan and Gena. As rule 144 does not apply to us here, we are unable to answer d-g, and any further info in that regard you would need to contact Mentor Capital to obtain.

Please let me know if there is anything else I can do to expedite this process, and thanks again.



Kindest regards,
*Adam F. Golden, Esq.*
Attorney at Law

1175 N.E. 125th Street, Suite 512
North Miami, Florida 33161
P: (305) 899-1800
F: (305) 891-1144
E: afg@kgpalaw.com
www.kgpalaw.com


**CONFIDENTIALITY NOTE**: The information contained in this transmission may be priviliged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immeditatley reply to the sender that you have received this communication in error then delete it.

**CIRCULAR 230 NOTICE**: To comply with U.S. Treasury Department and IRS regulations, we are required to advise you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this transmittal, is not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code, or (ii) promoting, marketing or recomnneding to another party any transaction or matter addressed in this e-mail or attachment.

---

**From:** Tod Anthony DiTommaso, Esq. [mailto:todanthonyditommaso@earthlink.net]
**Sent:** Tuesday, August 05, 2014 12:21 AM
**To:** Adam F. Golden
**Cc:** Dave Adams; Richard A. Golden
**Subject:** Re: MNTR Stock - Susan & Gena Golden - Opinion Letter

Mr. Golden,

I have received the wire transfer. Thank you.

I will be able to issue the opinion letters as soon as you send me the backup documentation concerning the date and manner in which the shareholders obtained ownership of the shares as well as support for the specific exemption. This may include stock certificates, corporate resolutions, contracts, and certifications concerning the shareholder's affiliation or non-affiliation status with the company and the non-shell status of the company.

7

Mentor - 000132

I am attaching a worksheet that you may use if the shareholders are asserting an exemption under Rule 144. If it is a different exemption, then send copies of the aforementioned documents and I will let you know if anything else is required.

Very Truly Yours,

Tod Anthony DiTommaso
(323) 497-1418

-----Original Message-----
From: "Adam F. Golden"
Sent: Aug 4, 2014 12:31 PM
To: "Tod Anthony DiTommaso, Esq."
Cc: Dave Adams , "Richard A. Golden"
Subject: MNTR Stock - Susan & Gena Golden - Opinion Letter

Mr. DiTommaso,

Thanks for your e-mail. I have been away on business, but just had a wire sent out today for $1,000.00 for opinion letters for Gena and Susan Golden, respectively. Please confirm receipt when you get the wire. Aside from copies of the certificates and payment for same, please let me know what other documentation you require so that we can expedite the process. Thanks in advance for your help.

Kindest regards,

*Adam F. Golden, Esq.*
Attorney at Law

1175 N.E. 125th Street, Suite 512
North Miami, Florida 33161
P: (305) 899-1800
F: (305) 891-1144
E: afg@kgpalaw.com
www.kgpalaw.com

**CONFIDENTIALITY NOTE:** The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immeditatley reply to the sender that you have received this communication in error then delete it.

**CIRCULAR 230 NOTICE:** To comply with U.S. Treasury Department and IRS regulations, we are required to advise you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this transmittal, is not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding penalties under the U.S. Internal Revenue Code, or (ii) promoting, marketing or recommnending to another party any transaction or matter addressed in this e-mail or attachment.

**From:** Tod Anthony DiTommaso, Esq. [mailto:todanthonyditommaso@earthlink.net]
**Sent:** Tuesday, July 22, 2014 1:02 PM
**To:** Adam F. Golden
**Cc:** Dave Adams
**Subject:** Re: MNTR Stock - Susan & Gena Golden

Dear Mr. Golden,

I charge $500.00 per opinion letter. If acceptable, I require the fees before I issue the letter. You can mail a check to 711 S. Olive St., Suite 203, Los Angeles, California, 90014 or send a wire transfer to:

Law office of Tod A. DiTommaso

Mentor - 000133

▉▉▉▉▉▉▉▉
Union Bank
1901 Avenue of the Stars, Suite 100
Los Angeles, CA 90067
310-551-8900

I also need backup documentation concerning the date and manner in which the shareholder obtained ownership of the shares as well as support for the specific exemption under which you are claiming. This may include stock certificates, corporate resolutions, contracts, and certifications concerning the shareholder's affiliation or non-affiliation status with the company and the non-shell status of the company.

Very Truly Yours,

Tod Anthony DiTommaso
(323) 497-1418

-----Original Message-----
>From: "Adam F. Golden"
>Sent: Jul 21, 2014 8:38 PM
>To: Paul Marotta
>Cc: "Richard A. Golden" , Megan Jeanne , "David C. Adams" , "todanthonyditommaso@earthlink.net"
>Subject: Re: MNTR Stock - Susan & Gena Golden
>
>Mr. DiTommaso,
>
>Good morning. Per our conversation with Mr. Marotta below, please advise as to what we need to do in order to expeditiously receive an opinion letter in the same fashion for our MNTR shares. Thank you
>
>Adam Golden
>
>Sent from my iPhone
>
>> On Jul 22, 2014, at 5:58 AM, "Paul Marotta" wrote:
>>
>> DiTommaso

```
*******CONFIDENTIALITY NOTICE*******

*****PRIVILEGED AND CONFIDENTIAL INFORMATION*****
The information contained in this document is intended solely for use by the persons or
entities identified above.  This electronically transmitted document contains privileged and
confidential information including information which may be protected by the attorney-client
and/or work product privileges.  If you are not the intended recipient, be aware that any
disclosure, copying, distribution or other use of the contents of this transmission is
prohibited.  If you received this transmission in error, please notify us immediately by
telephone (323-497-1418) and permanently delete this message without making a copy.


*******CONFIDENTIALITY NOTICE*******

*****PRIVILEGED AND CONFIDENTIAL INFORMATION*****
The information contained in this document is intended solely for use by the persons or
entities identified above.  This electronically transmitted document contains privileged and
confidential information including information which may be protected by the attorney-client
and/or work product privileges.  If you are not the intended recipient, be aware that any
disclosure, copying, distribution or other use of the contents of this transmission is
```

Mentor - 000134

prohibited.  If you received this transmission in error, please notify us immediately by telephone (323-497-1418) and permanently delete this message without making a copy.


*******CONFIDENTIALITY NOTICE*******

*****PRIVILEGED AND CONFIDENTIAL INFORMATION*****
The information contained in this document is intended solely for use by the persons or entities identified above.  This electronically transmitted document contains privileged and confidential information including information which may be protected by the attorney-client and/or work product privileges.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this transmission is prohibited.  If you received this transmission in error, please notify us immediately by telephone (323-497-1418) and permanently delete this message without making a copy.


*******CONFIDENTIALITY NOTICE*******

*****PRIVILEGED AND CONFIDENTIAL INFORMATION*****
The information contained in this document is intended solely for use by the persons or entities identified above.  This electronically transmitted document contains privileged and confidential information including information which may be protected by the attorney-client and/or work product privileges.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or other use of the contents of this transmission is prohibited.  If you received this transmission in error, please notify us immediately by telephone (323-497-1418) and permanently delete this message without making a copy.

Mentor - 000135

## CERTIFICATE OF SERVICE

I, Megan Jeanne, counsel for the above-named Defendant, hereby certify that the foregoing was filed via this Court's Electronic Case Filing system, which will cause a copy of the this filing to be forwarded to all counsel of record.

Date: October 23, 2017

/s/ Megan Jeanne
Megan Jeanne

**Exhibit D**

**From:** Chet Billingsley
**Sent:** Sunday, March 23, 2014 9:06 PM
**To:** bcrcomputerresources@gmail.com; Brendan Ryan (brendan@bcrglobal.org)
<brendan@bcrglobal.org>
**Subject:** MNTR Financial Postings

Brendan  -- In the Investors Corner Section, please change or post the following financials:

1) Change 2007 to 2013 Financials (Title), to 2007 – 2014 Financials (Title)

2) Delete the current 2012 annual financials and replace with the 2012 above

3) Delete the current 2013 1st half financials and replace with the 2013 Annual Financials, Use the same format in the title as for 2012

4) Add the Feb 28 Financials with the following title (grey) and subtitle (Blue)

   Title:  2014, February 28th Financials
   Subtitle: Supports 15 ( c ) 2-11 Disclosure of 2/28/14

5) On the Disclosures page replace the cureent 15 ( c ) 2-11 with the new one attached

6) For the title in Grey where it now says 15 ( c ) 2-11  , add a date so it says:  15 ( c ) 2 – 11  (February 28, 2014)

7) After the 15 ( c ) 2-11 but above the historic 1145 document please add the title

   Title:  Blanket Opinion Letter (In Grey)
   Subtitle: Establishes Free Tradability for Shares & Warrants under the 1145 Exemption

Best,

*Chet Billingsley*, Chairman & CEO
Δ **M E N T O R   C A P I T A L** , I N C. (*MNTR*)
Post Office Box 1709  Δ  Ramona, CA  92065
Dir: (760) 788 - 4700  Δ  Fax: (760) 788 - 2525

_____
Email:  Chet@MentorCapital.com      Website:  www.MentorCapital.com

PAUL DAVID MAROTTA (CA State Bar No. 111812)
MEGAN JEANNE (CA State Bar No. 251294)
THE CORPORATE LAW GROUP
1342 ROLLINS ROAD
BURLINGAME, CA 94010
Telephone:    (650) 227-8000
Facsimile:     (650) 227-8001
Email:          paul@tclg.com
                  megan@tclg.com


TRENT J. WADDOUPS
CARR & WADDOUPS
ATTORNEYS AT LAW, LLC
8 EAST BROADWAY, SUITE 609
SALT LAKE CITY, UTAH  84111
Telephone:    (801) 363-0888
Facsimile:     (801) 363-8512
Email:          trent@cw-law.net

Attorneys for Defendant
MENTOR CAPITAL, INC., a Delaware corporation

---

## UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF UTAH

| | |
|---|---|
| GENA GOLDEN, an individual and SUSAN GOLDEN, an individual,<br>Plaintiffs,<br><br>v.<br><br>MENTOR CAPITAL, INC., a Delaware corporation, LABERTEW & ASSOCIATES, a Utah limited liability company, and MICHAEL L. LABERTEW, an individual,<br>Defendants.<br><br>---<br><br>MENTOR CAPITAL, INC., a Delaware corporation,<br>Third-Party Plaintiff,<br><br>v.<br><br>RICHARD GOLDEN, an individual, and SCOTT VAN RIXEL, an individual,<br>Third-Party Defendants. | CIVIL ACTION NO. 2:15-CV-00176-JNP-BCW<br><br>Honorable Jill N. Parrish<br>Magistrate Brooke C. Wells<br><br>DECLARATION OF BRENDAN RYAN IN SUPPORT OF MENTOR CAPITAL, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION |

1

DECLARATION OF BRENDAN RYAN IN SUPPORT OF MENTOR CAPITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION



I, Brendan Ryan, declare as follows:

1.      I am the General Manager & Consultant at BCR Global, Inc., a California corporation.

2.      I have managed www.mentorcapital.com, the website for Mentor Capital, Inc., since December 19, 2013 and I have been responsible for that account the entire time.

3.      I was responsible for the placement of a copy of the Blanket Opinion Letter authored by Michel Labertew on the Mentor Capital website.

4.      Attached hereto as <u>Exhibit A</u> is a true and correct copy of the first Blanket Opinion Letter that was placed on Mentor Capital's website.

5.      Exhibit A was first placed on the Mentor Capital website on March 23, 2014 at 22:13:01 GMT-8 (10:13 p.m. pacific time).

6.      Before March 23, 2014 there was no way to access or read any blanket Opinion Letter on the Mentor Capital website.

I declare under penalty of perjury under the laws of the State of Utah and the laws of the United States of America that the foregoing is true and correct and that this Declaration was signed by the undersigned on August 27, 2017 at San Diego, California.

_____
Brendan Ryan

DECLARATION OF BRENDAN RYAN IN SUPPORT OF MENTOR CAPITAL, INC.'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# EXHIBIT F

Mentor - 000082



SUSAN GOLDEN
RICHARD GOLDEN
2280 NE 201 STREET
MIAMI, FL 33180

1410

63-0069/2670

DATE 10/03/14

PAY TO THE ORDER OF Scott Van Lixel

$ 81,250.00

Eighty One Thousand Two Hundred Fifty ... DOLLARS

BankUnited
1-877-779-2265
www.bankunited.com

MEMO MNTH

Robert A. Golden

⑆267090591⑆ ⑈985250 2575⑈ 1410

ACCT 9852502575 -- SER# 1410 -- AMNT $81,250.00 -- SEQ# 913285393 -Trans code 81 -- 3/24/2014

20140324 0000000985250975
8125000
North Miami Biscayne 0025 94004 5725 7   0015

572529039687 100025
TRN_DEBIT
RLEE

Mentor - 000083
Mentor - 000083

ACCT 9852502575 - SER# 1413 - AMNT $65,000.00 - SEQ# 913285394 -Trans code 81 - 3/24/2014

SUSAN GOLDEN
RICHARD GOLDEN
2280 NE 201 STREET
MIAMI, FL 33180

03-9059/2670

1413

DATE 20/23/14

PAY TO THE
ORDER OF  Scott Van Rijd _____ $65,000.00

Sixty five Thousand + 00/100 _____ DOLLARS

**BankUnited**
1-877-779-2265
www.bankunited.com

MEMO MNTR                    Richard A. Golden

⑆265709059⑆  ⑈9852502575⑈ 1413

ACCT 9852502575 - SER# 1413 - AMNT $65,000.00 - SEQ# 913285394 -Trans code 81 - 3/24/2014

Scott Van Rijd
4 Deposit Only

985250275

20140324 0000000098525027S
572529039688 100026
TRN_DEBIT    RLEE          6500000
North Miami Biscayne 0025 94004 5725 7? 0015